# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF GREGORY WRIGHT, et al.** ) | **CASE NO. 4:17-cv-02383-BYP** |
| ) | |
| ) | **JUDGE BENITA Y. PEARSON** |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **TRUMBULL COUNTY BOARD OF** ) | **DEFENDANTS' MOTION FOR SUMMARY** |
| **COMMISSIONERS, et al.** ) | **JUDGMENT** |
| ) | |
| **Defendants** ) | **(Oral Argument requested pursuant** |
| ) | **to L.R. 7.2(b))** |
| ) | |

Defendants Phillip Malvasi, D.O., Bethany Lobdell, RMA, NRCPT, and Rachel Hake, NRCMA, NRCEKG, RPT, by and through the undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully move this Court for an order granting summary judgment as to all claims of Plaintiff Barbara Wright, individually and as Administrator of the Estate of Gregory Wright, which pertain to her late husband's incarceration at the Trumbull County Jail from May 3, 2017 to May 5, 2017 and alleged "deliberate indifference" to Mr. Wright's "serious medical needs" while he was incarcerated. Registered Medical Assistant Lobdell and Nationally Registered Certified Medical Assistant Hake's medical interactions with Mr. Wright occurred during their respective 8-hour shifts on May 4-5, 2017, wherein they provided Wright with a bandage ("dressing") change for a leg wound, medication to address his stomach-related symptoms, and medical attention related to his potential drug withdrawal symptoms. Dr. Malvasi's involvement with Wright included ordering Wright's

prescription medication related to his preexisting blood clot issues. Dr. Malvasi and his supervising L.P.N. also trained and supervised all Jail Medical staff, including RMA Lobdell and NRCMA Hake, and provided them with appropriate and extensive written medical policies, procedures, and protocols, which were followed in this instance by Lobdell and Hake. These prudent medical actions do not constitute deliberate indifference to Wright's medical needs in violation of 42 U.S.C. § 1983. Furthermore, Plaintiffs have provided no evidence demonstrating such a violation or any injury proximately caused by Defendants' medical care. Accordingly, judgment in favor of Defendants is warranted as a matter of law.

      The factual and legal support for this motion is more fully outlined in the attached Memorandum in Support. This Memorandum, along with the attached exhibits and all deposition testimony previously filed with the Court, is incorporated herein by reference.

      Respectfully submitted,

**MELVIN F. O'BRIEN (0064252)**
**LEAH M. HOHENBERGER (0075640)**
Dickie, McCamey & Chilcote, P.C.
401 Market Street, Suite 401
Steubenville, OH 43952
740.284.1682 – Telephone
mobrien@dmclaw.com
-and-
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio 44114
216.685.1827 - Telephone
lhohenberger@dmclaw.com
**Attorneys for Defendants**

## REQUEST FOR ORAL ARGUMENT

Defendants, by and through counsel and pursuant to L.R. 7.2(b), hereby respectfully move this Court for oral argument on Defendants' Motion for Summary Judgment. Defendants submit that the complexity of this matter warrants such an argument and further consideration by the Court.

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2018 the foregoing Motion was filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        **LEAH M. HOHENBERGER (0075640)**
                                        **MELVIN F. O'BRIEN (0064252)**
                                        **Attorneys for Defendants**

## **MEMORANDUM IN SUPPORT**

**I.   STATEMENT OF FACTS**

    **A.   Procedural History**

Plaintiffs commenced this § 1983 action on November 13, 2017. (Compl., ECF Doc. No. 1.) Plaintiffs subsequently amended their Complaint on May 15, 2018 (Am. Compl., ECF Doc. No. 30), removing original Counts X, XII, and XIII (wrongful death, loss of consortium, and intentional infliction of emotional distress). Plaintiffs then dismissed Count VII of the First Amended Complaint (medical negligence) as to Defendants Hake and Lobdell on July 30, 2018 (ECF Doc. No. 61). Plaintiffs' remaining claims as to Defendants Hake, Lobdell, and Malvasi include claims pursuant to 42 U.S.C. § 1983 and a medical negligence claim as to Dr. Malvasi. (Compl., pp. 9-13.) The Amended Complaint states that Defendants' "deliberate indifference" to Wright's "serious medical needs" caused him "serious and permanent harm" and that Dr. Malvasi "breached the prevailing standard of care," causing harm to Wright. (Compl., ¶¶ 2, 11.)

    **B.   Mr. Wright's Incarceration and Alleged Medical Needs**

Mr. Wright reported to the Trumbull County Jail on May 3, 2017 in order to serve an 18-month sentence related to his conviction for crack cocaine possession and failure to comply with the order of a police officer.[1] When Wright arrived at the jail, he went through the normal jail intake process, which included responding to officers' medical and other usual intake questioning.[2] Mr. Wright was noted to be behaving normally and was without signs or

---

[1] *See* the deposition testimony of Barbara Wright, at pp. 29-30. The transcript of this testimony has been separately filed with the Court. (ECF Doc. No. 68.) *See, also*, Exhibit A attached hereto, at Trumbull 000047, which reflects the booking date, time, and related information for Wright. Exhibit A was marked as Exhibit B at the deposition of Barbara Wright (depo., pp. 34-35). Mr. Wright was scheduled to be transferred to the Lorain Correctional Institution on the May 5, 2017.

[2] Exhibit A. *See, also*, Exhibit E, at Trumbull 000048, which was marked as Exhibit 1 at the deposition of Lt. Shay. (ECF No. 69.)

symptoms of any alcohol or drug influence or withdrawal.[3]  Officer Machingo also recorded that Wright denied taking any non-prescription drugs and had no injuries or conditions that required the jail medical staff's immediate attention.[4]

Wright carried one medication, Xarelto, into the jail.[5]  This medication was taken, recorded, and reported by the supervising medical nurse, Carla Ahart, L.P.N., pursuant to jail and medical policies.[6]  Dr. Malvasi promptly approved Wright's 20 mg. Xarelto prescription.[7]  Nurse Ahart also completed the attendant medical booking assessment, recording Wright's need for a bandage ("dressing") change for a leg wound, his blood clot condition for which he took Xarelto, and his new admission that he had used heroin that morning.[8]  Consistent with the Officer Machingo's intake observations, Nurse Ahart further observed that Wright was stable, was in no distress of any kind, and did not require formal medical observation or additional correctional officer rounds at that time.[9]  Pursuant to medical department procedures, she also relayed

---

[3] Exhibit A; Exhibit E, at Trumbull 000048.

[4] Exhibit A, at Trumbull 000047; Exhibit E, at Trumbull 000048.

[5] *Id*. *See, also*, Exhibit B attached hereto, which was marked as Exhibit 2 at the deposition of Dr. Malvasi (ECF No. 72).

[6] Exhibit B. *See, also*, the deposition testimony of Carla Ahart, L.P.N., at pp. 53-54.  The transcript of this testimony has been separately filed with the Court.  (ECF Doc. No. 70.)

[7] Exhibit B.  *See, also*, the deposition testimony of Dr. Malvasi, at p. 18.  The transcript of this testimony has been separately filed with the Court.  (ECF Doc. No. 72.)

[8] Exhibit B.  *See, also*, the recorded Internal Investigation statement transcript of Nurse Ahart, at pp. 2-6, attached hereto as Exhibit C.  This statement was produced in discovery by Trumbull County and transcribed pursuant to Plaintiffs' counsel's request.

[9] Exhibit A; Exhibit C, pp. 3-6.  Officers perform hourly rounds relative to all inmates.  Additional rounds, if ordered, would be performed every ten minutes.

Wright's medical information and condition to the medical staff, along with the medical chart documentation she completed.[10]

On the morning of May 4, 2017, medical staff provided Wright with his Xarelto prescription at the 8:00 a.m. medication pass.[11] Officers had observed no issues with Wright at any time post-booking the day and evening before.[12] That afternoon, at approximately 4:00 p.m., Officer Zadroski brought Wright to the Medical Department in order to have his leg wound cleaned, medicated, and re-dressed.[13] Upon arrival, Bethany Lobdell, RMA, NRCPT (Registered Medical Assistant, Nationally Registered Certified Phlebotomy Technician), cleaned and placed a new dressing on Wright's wound.[14] However, Wright refused to allow Lobdell to apply medication to the wound.[15] While attending to his leg, Lobdell also inquired about Wright's withdrawal from any drugs after Wright mentioned that he was nauseated and had been vomiting.[16] Wright stated that he was "coming off of heroin."[17] Accordingly, and pursuant to medical policies, procedures, and protocols, Lobdell offered Wright three over-the-counter medications to Wright to be provided at that evening's medication pass, in order to address the

---

[10] Exhibit C, pp. 5-6. Wright had an existing medical chart from his prior stay at the jail. *See, e.g.*, Exhibit B, which references Wright's August 2016 incarceration.

[11] *See*, Exhibit D, the Medical Administration Record for Wright, which was marked as Exhibit 19 at the deposition of NRCMA Hake. (ECF No. 73.) *See, also*, Exhibit E, at Trumbull 000048.

[12] Exhibit E, at Trumbull 000048, 000063, 000091.

[13] Exhibit E, at Trumbull 000048, 000063, 000091, 000128, 000137, 000139.

[14] Exhibit E, at Trumbull 000063, 000137, 000139. *See, also,* the deposition testimony of RMA Lobdell. The transcript of this testimony has been separately filed with the Court. (ECF Doc. No. 74.)

[15] *Id.*

[16] Exhibit E, at Trumbull 000063, 000139; ECF No. 74.

[17] Exhibit E, at Trumbull 000139; ECF No. 74.

6

symptoms about which Wright complained.[18] Wright agreed to take those offered medications, and did so without incident or need for assistance at 8:00 p.m.[19] Officers reported no issues and nothing unusual involving Wright during the remainder of Lobdell's shift, which concluded at 10:00 p.m.[20]

On the morning of May 5, 2017, at approximately 12:05, Officers summoned Rachel Hake, NRCMA, NRCEKG, RPT (Nationally Registered Certified Medical Assistant; Nationally Registered Certified EKG Technician; Registered Phlebotomy Technician) to attend to Wright, who had vomited and was complaining of some numbness in his fingers.[21] Hake arrived to assess Wright, who reported that his stomach hurt, that he was feeling sick, and that he was coming off of heroin.[22] Hake noted that Wright was alert and oriented to person, place, and time, was "clammy" and "disheveled," and attempted to obtain his vitals.[23] However, Wright refused to cooperate with Hake to allow her to complete those vitals.[24] Given his lack of cooperation, Hake advised officers to continue to monitor him, to advise if his condition changed, and ensured that Wright would again receive the three medications initiated by Lobdell the evening before at the next medication pass, in order to address Wright's continued symptoms.[25]

---

[18] Exhibit E, at Trumbull 000048-49, 000063, 000139; ECF No. 74.

[19] *Id.*

[20] Exhibit E, at Trumbull 000049; ECF No. 74. .

[21] Exhibit E, at Trumbull 000049.

[22] Exhibit E, at Trumbull 000049. See also, Exhibit F, attached hereto, which was marked as Exhibit 20 at Hake's deposition, and see the deposition testimony of Hake. The transcript of this testimony has been separately filed with the Court. (ECF Doc. No. 73.)

[23] *Id.*

[24] *Id.*

[25] *Id.*

7

At approximately 4:30 that morning, Officers called for Hake to see Wright again as his symptoms had worsened.[26] However, Wright once again refused to cooperate so that Hake could complete a full vitals assessment and told her he did not want any offered medication for his stomach.[27] Hake nonetheless placed notes in Wright's chart for him to receive the withdrawal protocol medications he had been started on again at the 8:00 a.m. medication pass and told officers to continue to monitor him for any changes in his condition.[28] Officers thereafter complied with Hake's request and interacted with Wright on multiple occasions that morning, with no noted further concerning medical issues of any kind during her shift or before he was found unresponsive at approximately noon on May 5th.[29] An autopsy subsequently conducted relative to Wright confirmed that while he had some heroin in his system, his death was unrelated to heroin or heroin withdrawal and was due to an unknown, undiagnosed, and unexpected heart condition.[30]

## II. LAW AND ARGUMENT

### A. Legal Standard: Fed. R. Civ. P. 56

A court "shall grant summary judgment" when a movant demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may seek summary judgment by asserting that the nonmovant will be unable to present evidence to support an essential element of his claim. *Celotex Corp. v.*

---

[26] Exhibit E, at Trumbull 000140; ECF Doc. No. 73.

[27] *Id.*

[28] *Id.*

[29] Exhibit E.

[30] *See* the attached medical expert affidavit and report of Dr. Carla Baster, Exhibit G, as well as Exhibit H.

*Catrett*, 477 U.S. 317, 325 (1986). Thereafter, the burden shifts to the nonmovant to introduce specific facts that demonstrate the existence of a genuine issue precluding summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). These facts should "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

> **B. Plaintiffs Have Not Established that Defendants were Deliberately Indifferent to Wright's Serious Medical Needs**

The prudent and necessary medical actions taken by Lobdell, Hake, and Dr. Malvasi relative to Mr. Wright do not constitute deliberate indifference to Wright' medical needs in violation of 42 U.S.C. § 1983. To establish such a violation, Plaintiffs must demonstrate that Defendants were deliberately indifferent to Wright' "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Courts have defined deliberate indifference as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1979)). Plaintiffs can establish "deliberate indifference" if a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838.

Here, Registered Medical Assistant Lobdell and Nationally Registered Certified Medical Assistant Hake's medical interactions with Mr. Wright occurred during their respective 8-hour shifts on May 4-5, 2017, wherein they provided Wright with a bandage ("dressing") change for a leg wound, medication to address his stomach-related symptoms, and medical attention related to his potential drug withdrawal symptoms. Dr. Malvasi's involvement with Wright included ordering Wright's prescription medication related to his preexisting blood clot issues. Dr.

9

Malvasi and his supervising L.P.N. also trained and supervised all Jail Medical staff, including RMA Lobdell and NRCMA Hake, and provided them with appropriate and extensive written medical policies, procedures, and protocols, which were followed in this instance by Lobdell and Hake. These prudent medical actions do not constitute deliberate indifference to Wright's medical needs in violation of 42 U.S.C. § 1983. Furthermore, Plaintiffs have provided no evidence demonstrating such a violation or any injury proximately caused by Defendants' medical care. Accordingly, judgment in favor of Defendants is warranted as a matter of law. Plaintiffs have produced no evidence establishing such deliberate indifference or a causal connection to Wright' alleged injuries. In contrast, Defendants have produced expert medical evidence that they provided appropriate medical care to Mr. Wright and that Wright suffered no injuries related to his incarceration in May of 2017.[31]

### III. CONCLUSION

In summary, judgment in favor of Defendants is warranted as a matter of law because Plaintiffs cannot establish that Defendants were deliberately indifferent to Mr. Wright's medical needs while he was incarcerated or that any medical standard of care was breached by Dr. Malvasi.

Respectfully submitted,

*[signature]*

**MELVIN F. O'BRIEN (0064252)**
**LEAH M. HOHENBERGER (0075640)**
Dickie, McCamey & Chilcote, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio  44114
216.685.1827 - Telephone
lhohenberger@dmclaw.com
**Attorneys for Defendants**

---

[31] *See* the attached medical expert affidavit and report of Dr. Carla Baster, Exhibit G.