# IA17-J-03

Subject: in custody death of inmate Gregory L. Wright (SSN- 

On May 8, 2017 I was instructed by Chief Joseph Dragovich to conduct an internal investigation into the in custody death of Gregory L. Wright.

References:

1. Incident reports

# 10978
#10981

2. Statements:

Lt. Tracy Wix
Lt. Nicole O'Brien
Sgt. Richard Nichols
Sgt. Craig Tomko
CO Mary Osborne
CO Douglas Machingo
CO Robert Eckenrod
CO James Millik
CO Paul Burley
CO William Drier
CO Krista Reed

CO Joe Smith
CO Dave Pappada
CO Bonnie Lucic
CO Yale Watkins
CO Chaz Ochenbine
CO Christopher Zadroski
CO Anthony Zadroski
CO Nicholas Massary
CO Matt Abbott
CO Bernice Cintron
CO Jacob Daley

CO Todd Harvey
CO Benjamin Bowker
CO Bill Millik
CO Mike Basilon
CO Rudy Harsany
CO Wesley Washington
CO Jarod Guysinger
CO Eric Vens
CO Sarah Whitaker
CO Zanisha Powell
CO Timothy Yeager

RN Carla Ahart
MA Bethany Lobdell
MA Rachael Hake
MA Jessie Clay

3. Interviews:

Lt. Wix
Sgt. Tomko
CO Mary Osborne
CO Bonnie Lucic
CO Yale Watkins
CO Christopher Zadroski
CO Wesley Washington
CO Jarod Guysinger
CO Eric Vens






EXHIBIT E

CO Douglas Machingo
CO Robert Eckenrod
CO Krista Reed
CO Dave Pappada
RN Carla Ahart
CO Anthony Zadroski
CO Todd Harvey
CO Benjamin Bowker
CO Bill Millik
MA Bethany Lobdell
CO Sarah Whitaker
CO Timothy Yeager
MA Rachael Hake
MA Jessie Clay

4. Jail Logs:

Central Control Day Shift May 3,4,5, 2017
Central Control Afternoon Shift May 3,4 2017
Central Control Midnight Shift May 4,5 2017
2nd FSJ Day Shift May 3,4, 2017
2nd FSJ Afternoon Shift May 3,4, 2017
2nd FSJ Midnight Shift May 4,5, 2017
3rd FSJ Day Shift May 5, 2017
3rd FSJ Midnight Shift May 5, 2017

5. Watch Tour Reports:

May 05.2017 3A pod Day shift
May 05, 2017 2C pod Midnight shift

6. Misc

Inmate Gregory Wright Booking Summary
Inmate Gregory Wright Sentencing paperwork
Inmate Gregory Wright Medication Administration record
Inmate Gregory Wright Property Release form
Medical Progress notes form dated: 5-5-17

On May 3, 2017 at 0943 Inmate Gregory Wright arrived at the Central Control window as a walk in. Mr. Wright was sentenced to serve a prison sentence ordered by Judge Mckay case #2016-CR-818. Mr. Wright was sentenced to serve 6 months for a charge of possession of cocaine and twelve months for a charge of failure to comply with a police order for a total of eighteen months. Mr. Wright was permitted to self-report to the Trumbull County adult justice center at 0900. Mr. Wright reported at Central Control at 0943.

Officer Mary Osborne was working Central Control on this date and directed Mr. Wright to go to the east side of the building to be received at the east man door. Officer Osborne monitored this area but Wright failed to arrive in a timely manner. Officer Osborne notified booking staff and supervisors of Mr. Wright failing to arrive at the east man door. At 10:24 Mr. Wright arrived at the east man door and was taken into custody by Officer Douglas Machingo.

Officer Machingo pre-booked inmate Wright. A review of Mr. Wrights booking records shows officer Machingo did a complete booking. These booking records indicate that inmate Wright informed officer Machingo of medical issues and that be brought in medication. Officer Machingo brought inmate Wright into booking to finish the process and the medical unit is called to booking. RN Carla Ahart arrives in booking and completes a standard medical evaluation of Mr. Wright.

At 11:20 inmate Wright is placed in #1 holding cell to await being changed out. At 14:49 officer Christopher Zadroski escorts Mr. Wright to the changing area where he changes him from civilian clothing to jail clothing. Officer Zadroski notices a bandage on inmate Wright's leg and asks about it. Inmate Wright informs him he has had recently been in the hospital for blood clots in his legs. Officer Zadroski asked if he had seen medical staff and Mr. Wright said that he did. Officer Zadroski then transports Mr. Wright to his housing unit (2C) where he is housed on a porta-bunk on the floor. Officer Zadroski assist inmate Wright by carrying his mattress to the housing unit. At 1505 Inmate Wright enters 2C pod. Officer Zadroski conducts feeding and headcount that afternoon shift and reports no issues with Mr. Wright. Watch tour officers Anthony Zadroski and Matthew Abbot report nothing unusual regarding Mr. Wright during their checks.

On May 4, 2017 Midnight shift reports no issues with Mr. Wright.

At 0800 Mr. Wright receives his prescribed medication from MA Jesse Clay. Later on dayshift while conducting watch tours Officer Douglas Machingo is informed by Mr. Wright that his bandage on his leg needs changed. Medical is notified.

On May 4, 2017 at 1600 while working the 2nd floor control pod officer Matthew Watson is contacted by unknown inmates in the pod and informed that inmate Wright was vomiting and can barely walk. Officer Christopher Zadroski checks on inmate Wright while conducting a watch tour and verifies that he is vomiting; Medical is notified by Officer Watson and inmate Wright is transported by Officer Anthony Zadroski for evaluation. Officer Zadroski utilizes a wheelchair for this transport. Inmate Wright is evaluated by Medical Assistant Bethany Lobdell. MA Lobdell claimed that inmate Wright told her he was sick and that he was coming off of opiates. While in medical MA Lobdell changes a bandage to a wound on inmate Wrights leg. At 2011 medical pass, inmate Wright receives Imodium, Ibuprofen, and

Maalox by MA Lobdell. This is part of medical's detox protocol and initiated by MA Lobdell as a result of Mr. Wrights earlier statement. After receiving these medications Mr. Wright goes back to his bunk. Officer Nicholas Massary is on the back half of watch tours and reported nothing unusual after medication pass.

At 2330 Officer Sara Whitaker conducted headcount in the pod and noticed what she described as bile on the floor by inmate Wright's bunk. She asked him if had had seen medical about it and he said he had.

On May 5, 2017 at 0004 Officer Erik Vens was conducting a watch tour in 2C pod and noticed a substance extending from Mr. Wrights porta bunk and woke him up to check on him. Inmate Wright conveyed to him that his fingers were num. Officer Vens felt Mr. Wright needed medically assessed. He then called for medical to further check into Mr. Wright's condition.

At 0007 MA Rachael Hake arrived on station to assess Mr. Wright and was escorted by Officer Sara Whitaker. MA Hake attempted get a blood pressure reading on Mr. Wright. She described him as uncooperative and wouldn't hold still. She was unable to get his blood pressure. MA Hake did not have a pulse ox meter with her but tried to take his pulse by feeling on his wrist and using her watch. MA Hake said that Mr. Wright told her his stomach hurt. MA Hake left the pod within a few minutes. She informed Lt. O'Brien that his pulse was a little fast and that she felt Mr. Wright was going through opiate withdrawals and advised officers to let her know if his condition worsened.

Officer Whitaker's recollection of the assessment described Mr. Wright as fidgety and noticed he kept moving around. She also stated that when MA Hake asked questions Mr. Wright would answer but was unclear. She felt MA Hake could have done a better job.

MA Hake was asked and advised me that she did not contact Dr. Malvasi. She said that she didn't send Mr. Wright to the hospital at this time as she felt it was a common case of opiate withdrawals. She also stated Mr. Wright didn't complain about chest pains or shortness of breath and anything that would lead her to believe he was suffering from anything other than opiate withdrawals.

At 0410 Officer Wesley Washington was conducting a watch tour in 2 C pod and heard a groan coming from Mr. Wright. Upon further investigation he found Mr. Wright to be shaking and sweating profusely. Officer Washington felt it to be a seizure and called for medical to come to the pod.  At 0414 MA Hake arrived on station to assess Mr. Wright. She was escorted by Sgt. Tomko and CO's Harvey, Whitaker, and Yeager. MA Hake began to ask questions to Mr. Wright. He did not verbally respond. MA Hake attempted several times to check his blood pressure but Mr. Wright kept pulling away from her. MA Hake wanted to check his pulse ox but didn't have a pulse ox meter with her and had CO Harvey go to medical to retrieve it. When CO Harvey returned MA Hake checked his pulse ox and noted his pulse was elevated. At 0422 MA Hake and responding jail staff exited the housing unit. MA Hake does not contact Dr. Malvasi.

After this interaction Sgt.Tomko and Lieutenant O'Brien discussed Mr. Wright possibly being withheld from the scheduled ride out to prison. Mr. Wright was on the list to go. They decided to keep him in the housing area until they made a decision when Day shift supervisor Lieutenant Wix arrived on station.

At 0500 Officer Whitaker was in the pod transporting another inmate to booking for the prisoner trip. She encountered Mr. Wright and asked him how he was doing? He responded to her by saying: "Better".

At 0546 CO Whitaker passed out breakfast to Mr. Wright.

At 0600 Lieutenant's Wix and O'Brien and Sergeant Tomko discussed Mr. Wright's condition and it was decided that he would be best to hold him back from the prisoner transport due to his condition.

Lieutenant Wix decided to have Mr. Wright moved to the third floor. At 0625 Officers Bowker and Yeager transported Mr. Wright from 2C to 3A pod by wheelchair. He requires assistance getting in and out of the wheelchair. Officers assisted him to his bunk, he repositioned himself, and laid down.

At 0700 Officer Douglas Machingo conducts cell check on 3A pod. Mr. Wright is sleeping.

At 0817 MA Clay arrives for medication pass escorted by Officer Machingo. MA Clay reports that Mr. Wright refuses his medication. Mr. Wright states to her: "Stomach Acid". MA Clay offers him Maalox and he refuses.

Watch tours are conducted on Mr. Wright's housing area by CO's Bonnie Lucic and David Pappada. Mr. Wright is not listed as requiring any increased checks. A report generated by the SAS informer system shows that full watch tours were conducted at 8:04, 9:06, 10:01, and 11:03 prior to the discovery of Mr. Wright being un-responsive. All of these tours were completed by officer Pappada. Officer Pappada stated that during these tours we witnessed Mr. Wright wrapped in a blanket. He further stated that he noticed Mr. Wright had repositioned himself at least twice during these tours. He noticed nothing out of the ordinary as to the condition of Mr. Wright's cell.

At 1158 Officer Krista Reed and Douglas Machingo enter 3A pod to feed. Officer Reed places a lunch tray on Mr. Wrights hatch. When Mr. Wright fails to retrieve it Officer Reed further investigates and finds him unresponsive. Medical is immediately summonsed. MA Clay along with Sgt. Nichols and Officers Watkins, Eckenrod, and Vecchio respond and call for an ambulance at 1205. Officers Eckenrod and Watkins and MA Clay perform CPR until Med Star Ambulance arrives on station at 1212. Med Star continues CPR and transports Mr. Wright to the hospital at 1233.

# Findings

Based on research of all available materials and interviews conducted I submit these findings regarding staff actions relating to the in custody death of inmate Gregory L. Wright.

Inmate Wright was permitted to self-report to the Trumbull County Adult Justice Center. While this is rare it has been an increasing practice. After initially reporting to jail, Mr. Wright disappeared for a forty one minute period of time. Given Mr. Wrights lengthy history of charges involving drugs, this delay raises suspicion of what he was doing, including introduction of contraband and or last minute consumption of drugs or alcohol. Officer Osborne did a good job passing these suspicions off to supervisors and booking staff.

Officer Machingo did a complete and thorough screening during the intake process. He followed policy by immediately directing medical concerns to medical staff. During the initial screening in booking two issues are identified. Mr. Wright identifies that he has a wound on his leg that requires a dressing change. He also indicates that he had used heroin prior to incarceration. Although medical staff was made aware of Mr. Wrights needs their follow up care seems a bit sloppy. The need for Mr. Wrights bandage change or possible heroin withdrawals aren't indicated on any medical shift reports. Medical staff had to be contacted by jail staff to change the bandage on his leg the following day. It is at this time that a withdrawal from heroin is recognized. MA Lobdell puts inmate Wright on a withdrawal protocol. He is given three non-prescription drugs which are not documented.

It appears that up until the point that Mr. Wright was discovered unresponsive; all Correction Officers both recognized and addressed concerns for Mr. Wright's wellbeing during the course of their duties. Pod officers were attentive and worked in conjunction with watch tour officers to both identify and properly address Mr. Wright's medical issues by contacting and informing medical staff.

The big area of concern I have surrounds the actions taken by MA Rachael Hake. She was summonsed to Mr. Wright's pod two times by correctional staff during the midnight shift on May 5 2017. Both times she failed get a blood pressure reading during her assessments. MA Hake claims Mr. Wright was uncooperative and she couldn't get him to hold still to apply the blood pressure cuff. I feel that Mr. Wright's lack of verbalization should he prompted her to further look into his condition. MA Hake also arrived both times without a pulse ox meter. On the first check she used her watch and got a pulse manually. She made the determination that Mr. Wright's issues were that of withdrawal from opiates. She based this determination on her prior dealings with Mr. Wright from prior incarcerations as well as her incomplete assessment. MA Hake failed to contact Dr. Malvasi or Nurse Ahart for guidance when she was unable to complete her assessment. She failed to inform shift supervisors that she hadn't completed her vitals checks on Mr. Wright.

I agree with Lt. Wix suspending Mr. Wright from riding out to prison. It was a good decision as he was sick and vomiting. And any disruption during the transport would create a security risk.

At 0635 Mr. Wright was moved to 3A pod. Transporting officers Yeager and Bowker and receiving officers B. Millik and Powell didn't exchange any information as to why Mr. Wright was moved to the third floor. No indicators were left in the control pod or documented on the SAS panel. This information was therefore not briefed to day shift officers Lucic and Pappada.

Mr. Wright was not placed on any increased watch tour checks. MA Hake claims she ordered increased rounds every ten minutes but Sergeant Tomko denies this. I believe Sgt. Tomko as he had left the pod prior to MA Hake completing her assessment. I believe if MA Hake had requested increased medical rounds she would have noted it in her medical progress notes. In those notes she assumed he was riding out to prison in an hour. MA Hake claims she discussed Mr. Wright's condition with incoming MA Clay. MA Clay states she had nothing passed on to her regarding any issues involving Mr. Wright.

There is a failure by officers Lucic and Pappada to inquire why Mr. Wright was housed in 3A pod. This pod is used for suicidal, medical, and disciplinary individuals. The fact that no documentation was left on the control panel should have prompted them to investigate why he was there and what type if any security check was required on Mr. Wright. If officers Lucic and Pappada had reviewed incident reports as they should on a daily basis they would have noticed the prior shifts' issues with Mr. Wright.

Of the four security checks conducted during dayshift on Mr. Wright, all were all done by officer Pappada. Two of these tours slightly exceeded our policy 5.13 requiring checks shall not exceed 60 minutes (both checks exceeded by two minutes). Video of these checks was archived by Lt. Danny Lester. In the video officer Pappada walks past the cell without breaking his stride. He doesn't stop when looking into the cell. In his interview officer Pappada claims Mr. Wright was sleeping under his covers. Policy 5.13 states: "If an inmate is covered with bedding and/or breathing cannot be confirmed, the conducting officer will attempt to awaken or obtain a reaction from outside the cell." This was not done by officer Pappada during his watch tours of Mr. Wrights cell.

At 1200 When officer Reed discovers Mr. Wright unresponsive, she along with responding staff did a good in their response to the incident.

Lieutenant Eric Shay

**Eric Shay**

---

**To:** Bill Millik; Michael Basilon; Wesley Washington; Jarrett Guysinger; Erik Vens; Sarah Whitaker; Craig Tomko; Todd Harvey; Timothy Jr. Yeager; Benjamin Bowker; Zaneisha Powell
**Cc:** Nicole O'Brien
**Subject:** investigation

I am conducting the investigation into the in custody death of inmate Gregory Wright. I need to ask you a few questions regarding any interaction you may have had with Mr. Wright. While being questions you have the right to have an attorney ( or any person) of your choice present during questioning. I will begin conducting these interviews on Wednesday, May 17 2017.

**Eric Shay**

| | |
|---|---|
| **From:** | Eric Shay |
| **Sent:** | Monday, May 15, 2017 1:53 PM |
| **To:** | Christopher Zadroski; Anthony J. Zadroski; Matthew Abbott; Bernice Cintron; Chaz Ochsenbine; Mathew Watson; Nicholas Massary; Jacob Daley |
| **Cc:** | John Buch |
| **Subject:** | interview |

I am conducting the investigation into the in custody death of inmate Gregory Wright. I need to ask you a few questions regarding any interaction you may have had with him. I will begin this process on Wednesday, May 17 2017.

**Eric Shay**

| | |
|---|---|
| **From:** | Eric Shay |
| **Sent:** | Monday, May 15, 2017 1:49 PM |
| **To:** | Douglas Machingo; Robert Eckenrod; Paul Burley; William A. Dreier; Krista Reed; David Pappada; Bonnie Lucic; Yale Watkins; James Vecchio; Richard Nichols |
| **Cc:** | Tracy Wix |
| **Subject:** | interviews |

I am conducting the investigation into the in custody death of inmate Gregory Wright. I need to ask you a few questions regarding any interaction you may have had with him. I will begin this process on Wednesday, May 17 2017. Thank you.

## Eric Shay

**From:** Eric Shay
**Sent:** Tuesday, May 16, 2017 1:09 PM
**To:** Todd Harvey; Jarrett Guysinger; Erik Vens; Craig Tomko; Sarah Whitaker; Wesley Washington; Benjamin Bowker; Timothy Jr. Yeager; Christopher Zadroski; Mathew Watson; Douglas Machingo; David Pappada; Bonnie Lucic; Krista Reed; Robert Eckenrod; Yale Watkins; Mary Osborne
**Cc:** Daniel Mason; 'Randy Weltman (srwelt@sbcglobal.net)'; Tracy Wix; John Buch; Nicole O'Brien
**Subject:** RE: interviews

These will take place in the Sheriffs conference room on Thursday, May 18.

**From:** Eric Shay
**Sent:** Tuesday, May 16, 2017 1:07 PM
**To:** Todd Harvey; Jarrett Guysinger; Erik Vens; Craig Tomko; Sarah Whitaker; Wesley Washington; Benjamin Bowker; Timothy Jr. Yeager; Christopher Zadroski; Mathew Watson; Douglas Machingo; David Pappada; Bonnie Lucic; Krista Reed; Robert Eckenrod; Yale Watkins; Mary Osborne
**Cc:** Daniel Mason; Randy Weltman (srwelt@sbcglobal.net); Tracy Wix; John Buch; Nicole O'Brien
**Subject:** interviews

Below is a schedule for interviews regarding the in custody death of inmate Gregory Wright.
0930 Todd Harvey
0945 Jarrod Guysinger
1000 Erik Vens
1015 Craig Tomko
1030 Sarah Whitaker
1045 Wesley Washington
1100 Benjamin Bowker
1115 Tim Yeager
1130 Chris Zadroski
1145 Matthew Watson
1200 Douglas Machingo
1215 David Pappada
1230 Bonnie Lucic
1245 Krista Reed
1300 Robert Eckenrod
1315 Yale Watkins
1330 Mary Osborne

List of those to be questioned / interaction with inmate Gregory Wright

Day Shift Mary Osborne

1. Doug Machingo – (+)
   a. Booking officer
   b. Watch tours 5-4-17
   c. Head Count 5-5-17
   d. Med Pass 5-5-17
   e. Feeding 5-5-17
   f. Response to incident 5-5-17
2. Robert Eckenrod –
   a. Response to incident 5-5-17
3. ~~James Millik –~~
   a. Pod officer 5-4-17
4. ~~Paul Burley –~~
   a. Watch tours 5-4-17
5. Joe Smith –
   a. Headcount 5-4-17
   b. Feeding 5-4-17
6. ~~William Drier –~~
   a. Headcount 5-4-17
   b. Feeding 5-4-17
   c. Med pass 5-4-17
7. Krista Reed – (+)
   a. Headcount 5-5-17
   b. Feeding 5-5-17
   c. Resonse to incident
8. Dave Pappada – (+)
   a. Pod officer 5-5-17
   b. Watch tours 5-5-17
9. Bonnie Lucic – (+)
   a. Pod officer 5-5-17
   b. Watch tours 5-5-17
10. Yale Watkins –
    a. Response to incident
11. James Vecchio –
    a. Response to incident
12. Tracy Wix –
    a. Dayshift supervisor
    b. Response to incident
13. Rick Nichols

      a. Dayshift supervisor
b. Response to incident

Afternoon Shift

1. Chris Zadroski (+)
   a. Transported to cell after booking
   b. Headcount/Feeding 5-3-17
   c. Watch tours 5-4-17
   d. Transport to medical 5-4-17
2. Anthony Zadroski
   a. Watch tours 5-3-17
   b. Med Pass 5-4-17
3. Matt Abbott
   a. Watch tours 5-3-17
4. ~~Bernice Cintron~~
   a. Pod officer 5-3-17
5. Chaz Ochenbine
   a. Med pass 5-3-17
6. Matt Watson +
   a. Pod officer 5-4-17
7. ~~Nick Massary~~
   a. Watch tours 5-4-17
8. Jacob Daley
   a. Feeding 5-4-17

Midnight Shift

1. Bill Mililk ←
   a. Pod officer 5-4-17
   b. Pod officer 5-5-17
   c. Watch tours 5-5-17
2. ~~Mike Bastion~~
   a. Watch tours 5-4-17
3. ~~Rudy Harsany~~
   a. Watch tours 5-4-17
4. Wesley Washington (+)
   a. Head count 5-4-17
   b. Feeding 5-4-17
   c. Watch tours 5-5-17
5. ✓ Jarod Guysinger (+)

        a. Pod officer 5-5-17
b. Wrote incident report 5-5-17

6. Eric Vens
   a. Watch tours 5-5-17
   b. Called for medical assistance 5-5-17
7. Sarah Whitaker
   a. Headcount 5-5-17
   b. Escorted medical 5-5-17 0007 for assessment
   c. Feeding 5-5-17
8. Craig Tomko
   a. Escorted medical 5-5-17 0414 for assessment
9. Todd Harvey
   a. Escorted medical 5-5-17 0414 for assessment
10. T.J. Yeager
    a. Escorted medical 5-5-17 0414 for assessment
    b. Transported from 2nd floor to 3rd floor.
11. Ben Bowker
    a. Transported from 2nd floor to 3rd floor.
12. ~~Zanisha Powell~~
    a. Pod officer 5-5-17
    b. Watch tours 5-5-17Z

Medical Staff:

1. Dr. Phillip Malvasi
2. Carla Oles-
   a. Intake screening
   b. Present during 5-4-17 sick call
3. Bethany Lobdell
   a. Med pass 5-3-17 Noons
   b. Wright to Sick call 5-4-17
   c. Med pass 5-4-17 Noons
4. Rachael Hake
   a. Summonsed to 2nd floor 0007
   b. Summonsed to 2nd floor 0414
   c. Trip?
5. Jessie Clay
   a. Med pass 5-4-17 Days
   b. Med Pass 5-5-17 Days
   c. Responding MA for incident
6. Laura Yoder
   a. MA on duty 5-4-17 Mids

On Wednesday May 3rd 2017 at 0943 common plea commit Gregory Wright reported at the central control window and was advised to report to the eastman door. Gregory Wright arrived at the eastman door at 10:24 transported by officer Doug Machingo into pre-intake.

5-11-2017

Date

Mary Richardson

Name

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 J - 03

LOCATION 150 High St

DATE TIME 5-18-17 13:31

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

SIGNATURE OF EMPLOYEE

PRINTED NAME

SIGNATURE OF INVESTIGATOR

Eric Shaw

PRINTED NAME

Questions for Mary Osbone

Q. On 5-3-17 where were you assigned to work?

Q. While working Central Control did you encounter a walk in commitment Gregory Wright?

Q. What did his commitment say?

Q What did you instruct him to do?

Q. Did he show up at the east man door?

Q. What did you do?

Q. When did he show up?

Q. How much time had passed?



On May 3rd 2017 I Officer Anthony Zadroski was assigned to front half watch tours on afternoon shift. Throughout my watch tours I witnessed Mr. Gregory L. Wright lying in a portable bunk on tower two C-Pod floor. I also witnessed throughout my watch tours Wright being in conversations with other inmates that were housed in the same pod. No medical complaints or any other issues were brought to my attention throughout my watch tours regarding Wright.

On May 4th 2017 I Officer Anthony Zadroski was assigned as the medical officer for Medical Assistant Bethany Lobdell on afternoon shift. When I arrived to medical with a group of inmates Lobdell advised me that I had a medical transport add-on. The add-on was Mr. Gregory L. Wright for a bandage change. When I arrived on tower two to escort Wright to medical I was advised that the wheel chair was needed for transport. I radioed for an available officer to retrieve the wheel chair from medical and bring it to tower two. Officer Chaz Ochsenbine arrived on station with the wheel chair. When I went into C-Pod Wright did not need any help getting up out of his portable bunk and into the wheel chair. I noticed that Wright was groggy like he was sick or coming off of some substance. When in medical Wright was able to get onto the examination table with zero assistance needed. Wright had what looked to be a burn mark on his ankle. Lobdell began to clean Wrights ankle with some hydrogen peroxide. When the hydrogen peroxide touched the wound Wright jerked his leg back and stated he didn't want any more on his ankle. Wright also refused all healing creams to be placed on his ankle and only wanted his ankle wrapped with gauze. Lobdell asked Wright if he was coming off of anything which he stated yes but had mumbled what he was coming off of. Lobdell said to Wright that she would be setting him up for detox medications and that he needed to come up to the cart during medication pass. While on medication pass Wright came up to the cart at the 2C-Pod main entrance without any assistance needed and received his detox meds without incident.

These were the only interactions I had with Mr. Wright while in the custody of the Trumbull County Adult Justice Center.

[signature] 5-16-17

Anthony J. Zadroski

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17- J - 03

LOCATION 150 High St

DATE TIME 0930 5-10-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Anthony J. Zadroski
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Questions for Anthony Zadroski

Q. On 5-3-17 where were you assigned to work?

Q. On this date did you come in contact with inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright?

Related – Inmate Wright.

Q. Did you speak to Mr. Wright?

Q. On 5-4-17 where were you assigned to work?

Q. On this date did you come in contact with inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright?

Q. Were you present during MA Lobdell'sevaluation of Mr. Wright?

Q. Did MA Lobdell share her assessment of inmate Wrights condition?

Q. Did MA Lobdell give any special instructions in regards to Mr. Wright?

Q. Based on the conversation you witnessed what did you believe medical was treating Mr. Wright for?

Q. Did she contact Dr. Malvasi?

Q. Did she inform the shift supervisorof her findings?

Q. Based on the conversation you witnessed what did you believe medical was treating Mr. Wright for?

05-12-2017

At about 0414 on 05/05/2017 Officer Washington was doing a watch tour on Tower 2 and called for medical to report to Tower 2 with her bag. Sergeant Tomko, Officer Yeager, and I reported to Tower 2. When we arrived on Tower 2 with Medical Assistant Rachel Hake we went into 2C-Pod and inmate Wright was in a porta bunk just inside the door to the right. On the floor, coming from his bunk was a stream of what looked to me like urine. Medical Assistant Hake started to take his vitals starting with his blood pressure. Inmate Wright was moaning and moving so it was unclear to me if his blood pressure was taken. Medical Assistant Hake wanted to take his pulse and oxygen count. Medical assistant Hake did not have her pulse ox meter in her bag. I went down to medical to retrieve the pulse ox meter and returned to 2C-Pod. Medical Assistant Hake performed a check on his pulse and oxygen count. After that was complete I asked her if his vitals were okay. M.A. Hake stated that his pulse was a little elevated, but that was common when someone is detoxing from heroin. After that we exited 2C-Pod and Sgt. Tomko informed M.A. Hake that inmate Wright was scheduled to be transferred to prison in the morning. Inmate Wright was left in 2C-Pod until it would be determined if he was going to remain here or be transferred to prison in the morning. At that point I went back down to booking. That was the last contact or observation that I had of inmate Wright.

C.O. Todd A. Harvey

[signature] 05/12/2017

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER 1A17-J-03

LOCATION 151 High St

DATE TIME 5-18-17 948

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

TODD A. HARVEY
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Questions for Todd Harvey:

Q. On May 5, 2017 what were your assigned job duties?

Q. Did you respond to a medical incident regarding Greg Wright?

Q. Who was present? Tomko Harvey [illegible]

Q. What did you see when you arrived at the scene?

Q. Was inmate Wright Conscious?

Q. Did inmate Wright Speak? Did she complete [illegible] [illegible]

Q. What action did MA Hake take?

Q. Did MA Hake share here assessment of inmate Wrights condition?

Q. Did she contact Dr. Malvasi?

Q. Did she inform the shift supervisor of her findings?

Q. When Sgt. Tomko advised MA Hake of inmate Wright being transported to prison...what was her reply?

This statement is in regards to the jail incident with inmate Gregory Wright. I, Officer Guysinger, was stationed on the 2nd floor on May 5th 2017. When Officer Vens was was on station for a tour, he noticed that inmate Wright, who was bunked on the floor, was making noises and noticed vomit on the floor next to him. Vens asked if the inmate was okay and he told me that the inmate was incoherent but also mentioned the inmate complained of numb fingers. Vens called for medical to assess the inmate and medical assistant Rachel arrived shortly after the call. She told me that Wright didn't comply with the vitals check and instructed me to keep an eye on him. Later throughout the night, while Washington was doing his watch tour in C-Pod, we both heard Wright make a screeching noise and can see the inmate shaking. Washington went to the inmate to make sure he was okay and called for medical to come up and told her to bring her bag. Rachel, along with officers Harvey, Yeager, and Sergeant Tomko, came to the 2nd floor and checked his heart rate, but didn't comply with anything else. Officer Whitaker was already on station and went into C-pod to check the inmate as well. Again, I was told to keep an eye on him and to see if he has another seizure. At around 0630, officers Bowker and Yeager arrived on station to bring the inmate to the 3rd floor due to his deteriorating condition. With his condition, a wheelchair was needed to transport the inmate. Nothing further to report. ~ Guysinger # 41

5-15-17

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER 1A17 J -03

LOCATION 150 High St-

DATE TIME 5-10-17 1004

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under Investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature] SIGNATURE OF EMPLOYEE — Jarrett Guysinger PRINTED NAME

[signature] SIGNATURE OF INVESTIGATOR — Eric Shay PRINTED NAME

Questions for Jarrod Guysinger

Q. On 5-5-17 where were you assigned to work? 2nd

Q. Was inmate Greg Wright housed on your floor? Where? 2C

Q. Did you notice anything unusual with inmate Wright during your shift?

Q. Did you speak to inmate Wright?

Q. Did medical see inmate Wright during your shift?

Q. How many times?

Q. Did medical give any special instructions regarding Mr. Wright?

Q. Describe what you witnessed when Mr. Wright was moved from your floor?

Q. In your report and statement you describe inmate Wright as incoherent.....what do you mean by that?

On midnight turn shift 5 May 2017 I, Officer Erik Vens, was posted in booking to conduct watch tours. These tours were to include the first four hours of my scheduled eight hour shift after which the last four hours I was scheduled to work the control desk within the minimum security portion of the justice center. These watch tours were to consist of Towers Four and Two as well as MSJ (Minimum Security Jail).

During the first scheduled watch tour on Tower Two, at 2358, upon entering 2C an inmate housed on the floor to the right side of the main pod door (2C101) appeared to have spilled what initially appeared to be coffee from his portable bunk extending towards the day area tables. At this time this reporting officer stopped at the table directly adjacent to where this inmate, later identified as Gregory Wright (Jail ID #016104), was laying and spoke with him briefly as to what had spilled on the floor. While speaking with Inmate Wright he expressed to this Officer that his fingers were numb. I then asked Inmate Wright if he had taken any substances prior to commitment to the adult justice center and he only mentioned that he was on blood pressure medications. I then asked again if he was possibly withdrawing from alcohol or any other substances to which Inmate Wright did not answer and just laid his head back down after showing me his fingers with both hands extended in the air.

During that conversation Inmate Wright appeared to be in under the influence of an unknown substance and that the spill near his bunk may have been vomit. After concluding speaking with Inmate Wright and before continuing the rest of the watch tour this reporting Officer exited 2C101 and entered the control tower to call medical. Medical Assistant Rachel Hake was on duty at the time and this reporting Officer requested that she report to the second floor to assess Inmate Wright. At that time Medical Assistant Hake advised that she would be up to speak with Inmate Wright. This Officer then called for an available Officer in booking to report to Tower Two over the radio to standby with Medical Assistant Hake to assess Inmate Wright. After speaking with both Inmate Wright and Medical Assistant Hake I then continued the remainder of my watch tour and exited the floor at 0008.

After completing my watch tour in MSJ at 0012 this Officer intended to report back to Tower Two in the event any further assistance was needed. By the time I exited MSJ Medical Assistant Hake was also exiting Tower Two and advised that Inmate Wright was going through possible heroin withdrawal. During the remaining three watch tours by this reporting Officer special attention was paid to Inmate Wright to ensure he was not experiencing any additional symptoms. Inmate Wright did not continue to vomit or complain of any additional problems that would require immediate medical attention. After completing my last tour and assuming my post in MSJ this reporting Officer had no further contact with Inmate Wright and therefore have nothing further to report.

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 J - 03

LOCATION 15th High St-

DATE TIME 5-18-17 10-22-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature] SIGNATURE OF EMPLOYEE — ERIK VENS PRINTED NAME

[signature] SIGNATURE OF INVESTIGATOR — Eric Shaw PRINTED NAME

Questions for Erik Vens

Q. On 5-5-17 where were you assigned to work? 1st [illegible] / [illegible]

Q. On this date did you come in contact with inmate Gregory Wright? 4 [illegible]

Q. Describe what interaction you had with Mr. Wright? 2358

Q. Did you speak to Mr. Wright?

Q. Describe the conversation?

Q. Did you feel Mr. Wright was in need of medical attention?

Q. Were you present during MA Hake's evaluation of Mr. Wright?

Q. Did MA Hake share her assessment of inmate Wrights condition?

Q. Did MA Hake give any special instructions in regards to Mr. Wright?

Q. Did she contact Dr. Malvasi?

Q. Did she inform the shift supervisorof her findings?

05-13-2017

On 5-5-2017 at approximately 0415 hrs, Officer Wesley Washington who was performing a watch tour on the 2nd floor, called for all available officers and medical for an inmate who was possibly having a seizure. Officers Timothy Yeager, Todd Harvey, Medical Assistant Rachel Hake and myself (Sgt Craig Tomko) reported to the 2nd floor and entered C-pod. There we found Inmate Gregory Wright laying in his bunk. Inmate Wright was shaking slightly and moaning quietly. There was also a stream of a clear dark yellow liquid next to his bunk that I assumed at the time to be vomit.

At that time MA Hake and myself made several attempts to get Inmate Wright to respond. Several times while we were speaking to him he would look at us but would not respond verbally. MA Hake attempted several times to take Inmate Wrights' vitals but was unsuccessful due to him continually pulling away and being uncooperative. At that time I exited the pod and returned to booking to update Lt. O'Brien on the situation and discuss our options based on the fact that Inmate Wright was due to ride out to LCI that morning.

Upon arriving in booking, I advised Lt. O'Brien of inmate Wrights' condition and informed her that I was unsure if Inmate Wright would be able to be transported with the prison ride out. Lt. O'Brien decided that we would have Inmate Wright remain on the 2nd floor for the time being and to have him reassessed closer to the departure time of the ride out which was scheduled for 0700 hrs.

At approximately 0620 hrs., I proceeded to administration and made contact with Lt. Tracy Wix who came on duty at 0600 hrs. to make sure she was aware of what was going on with Inmate Wright. Lt. Wix informed me that she had discussed the situation with Lt. O'Brien and that she had decided that Inmate Wright would be rode out to prison at another time and ordered me to have him transported to the 3rd floor. I then called booking and advised Officer Timothy Yeager to get another officer and transport Inmate Wright to 3A-Pod for medical lockdown. My shift ended and I was off station at 0645 hrs.

SGT. Craig Tomko

SGT. Craig Tomko

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]
PERSONNEL INVESTIGATION NUMBER 1A17J-03

LOCATION 150 High St

DATE TIME

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Craig S. Tomko
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Earl Shy
PRINTED NAME

Questions for Craig Tomko

Q. On May 5, 2017 what were your assigned job duties?

Q. Did you respond to a medical incident regarding Greg Wright?

Tomko – MA Hake – Duke
Washington –

Q. Who was present?

Q. What did you see when you arrived at the scene?

Q. Was inmate Wright Conscious?

Q. Did inmate Wright Speak?

– Leave

Q. What action did MA Hake take?

Q. Did MA Hake share her assessment of inmate Wrights condition?

Q. Did she contact Dr. Malvasi?

Q. When you advised MA Hake of inmate Wright being transported to prison...what was her reply?

Q. Did you at any time feel Mr. Wright was in need of emergency care?

On Thursday May 4th 2017, I, Officer Sarah Whitaker was assigned as a rover for Tower 2. Upon conducting headcount in C-Pod, I announced Gregory Wright's name, in which he was listed as housed on the floor. Inmate Wright made eye contact with me and I asked if he was alright and he stated "yes". I then observed a small puddle of liquid next to his bunk and asked what it was. Another inmate housed on the floor stated that inmate Wright has been sick almost all day and that it was bile on the ground next to inmate Wright. I asked Wright if he saw the nurse today and he stated "yes." After this, I left C-Pod and entered into the central bubble for Tower 2 to inform CO Guysinger (who was in control of Tower 2 for this night) of the status of inmate Wright.

During the first watch tour, CO Vens called for medical to come to Tower 2 C-Pod to assess inmate Wright. Medical Assistant Rachel and I arrived on scene at 0007 hrs. MA Rachel attempted to take his blood pressure, but Wright was moving around too much and she then checked his pulse by grabbing his wrist and looking at her watch. Inmate Wright still was not holding still so I was unaware of how far along Rachel was able to get to check his pulse. We then exited C-Pod and entered into the bubble where CO Guysinger and Lt. N. O'Brien were. MA Rachel stated to Lt. N. O'Brien that inmate Wright's pulse seemed a little high, but she was unable to get clear readings and to call her back if he needed assessed again. Rachel also stated that Wright was coming off of heroin withdrawals and his demeanor was normal.

At 0409 hrs, I entered Tower 2 to relieve CO Guysinger. During CO Washington's watch tour that started on Tower 2 at 0405 hrs, he entered into C-Pod. CO Guysinger had the intercom on and almost as soon as CO Washington entered into the top tier of C-Pod, inmate Wright yelled and seemed as though he started shaking. CO Washington and I immediately went over to check if Wright was okay and called for medical once again. At 0414 hrs, CO's Harvey, Yeager and Sgt. Tomko all arrived on scene with MA Rachel. Inmate Wright was covered in sweat and seemed to be very disoriented. Rachel once again attempted to get a blood pressure reading on Wright, but was unsuccessful. Rachel then looked for her pulse ox finger machine and realized she left it down in medical. CO Harvey went downstairs to retrieve it and came back upstairs. MA Rachel was able to use this machine and got an oxygen reading of 96% and a pulse of 169. She then stated that there was nothing else she could do at the time and so everyone left the pod.

Around 0500 hrs, I entered back into C-Pod to retrieve inmate John Wright out of 2C-105 for ride-out. While waiting inside the pod for a couple minutes while John Wright gathered his belongings , I asked Gregory Wright if he was feeling any better and he shook his head and stated "yes, a little." Gregory was sitting up and seemed to be more awake and alert than he was just a short amount of time ago. I then left the pod with John Wright.

At 0546 hrs, I arrived onto tower 2 for breakfast bags to be passed out. While in C-Pod, inmate Wright did not get out of his bunk, but he acknowledged that I said his name and made eye contact with me. I told him I was placing his bag next to his bunk and replied "okay."

At this time, there is nothing further to report.

SWhitaker #76

**Trumbull County**
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER 1017 J - 03

LOCATION 150 High St.

DATE TIME 5-18-17 · 10:50

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature] — SIGNATURE OF EMPLOYEE

Susan E. Whitaker — PRINTED NAME

[signature] — SIGNATURE OF INVESTIGATOR

Earl Sharp — PRINTED NAME

Questions for Sarah Whitaker

Q. On May 5, 2017 what were your assigned job duties?

Q. in the course of your duties did you have any interaction with inmate Greg Wright?

Q. Did you respond to a medical incident regarding Greg Wright?

Q. On the first incident who was present?

Q. What did you see when you arrived at the scene?

Q. Was inmate Wright Conscious?

Q. Did inmate Wright Speak?

Q. What action did MA Hake take?

Q. Did MA Hake share her assessment of inmate Wrights condition?

Q. Did she contact Dr. Malvasi?

Q. On the second incident who was present?

Q. What did you see when you arrived at the scene?

Q. Was inmate Wright Conscious?

Q. Did inmate Wright Speak?

Q. What action did MA Hake take?

Q. Did MA Hake share her assessment of inmate Wrights condition?

Q. Did she contact Dr. Malvasi?

Q. When getting ride outs for prisoner did you again see Mr. Wright?

Q. What was the conversation?

Q You again had interaction with Mr. Wright at feeding time? What was the conversation?

River

2 r.

Blood Pressure

- incoherent

Incoherent

Not sure

0430-500

05-

On May 5th, 2017 at approximately 0325 hours this Officer, Wesley Washington unit #52, was conducting a watch tour on Tower 2. Upon entering into the main door of 2C-Pod I observed multiple inmates on the floor housed in porta-bunks when I observed a trail of some sort of watery substance coming from an inmate's porta bunk right next to the pod door extending out several feet into the common area. I then walked forward to get a better view of the substance when I smelled an almost urine-like odor. I then noticed a very dark substance at the head of the inmate's porta bunk that appeared to be vomit. It was at this time that another inmate who was housed on the floor stated to me, "Yo dude is messed up, he's detoxing bad." I then tapped on the inmate's porta bunk asking him if he was okay, to which he slightly rolled over, nodded his head, and uttered out 'mmhm'. It was at this time I identified the inmate as Gregory Wright, recognizing him from a past book in. I then continued on with my tour and upon entering into MSJ I spoke with Officer Vens who had called medical up to check on an inmate earlier in the night asking him if it was this same inmate I had just seen, which he informed me that it was. Officer Vens informed me that Medical Assistant Hake had assessed inmate Gregory and found that he was detoxing from opiates. Soon after this while I was conducting my second watch tour at approximately 0415 hours I entered into the bottom of 2C-Pod and noticed that inmate Wright had rolled over to his right side, slightly covered himself underneath his blanket, and was facing in towards the wall, the opposite direction he was facing when I had observed and checked on him during my first watch tour. I then continued on with my watch tour, went into the bottom of 2B-Pod and around into the top of 2C-Pod. As I was about to enter into the top of 2D-Pod I heard inmate Wright let out a loud, but somewhat muffled groan, when I observed him slowly roll onto his back and begin shaking. I then closed the upper door to 2D-Pod went down the steps and observed inmate Wright in his bunk where he appeared to be having a seizure. I immediately radioed for available Officers and medical to report to my location with the emergency bag to give care to inmate Wright, Officer Whitaker who was already on station in the control tower entered into 2C-Pod soon thereafter followed by Sergeant Tomko, Officer Harvey, Officer Yeager, and M.A. Hake. Prior to the above named Officers arriving on station I removed the blanket from inmate Wright and found that he was sweating profusely and shaking, so I then rolled him onto his left side to help maintain an open airway and supported his head and neck so that it would not bang off the edge of his porta bunk. Once M.A. Hake got what she needed from her emergency bag I relinquished care of inmate Wright to her due to the fact that I had to finish my watch tour. At that point I had no further contact with inmate Wright.

C. O. Wesley Washington

Wesley Washington

Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 J - 03

LOCATION 150 High St.

DATE TIME 5-18-17 1126

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature] SIGNATURE OF EMPLOYEE — WESLEY WASHINGTON PRINTED NAME

[signature] SIGNATURE OF INVESTIGATOR — Eric Shaw PRINTED NAME

Questions for Wesley Washington

310

Q. On 5-5-17 where were you assigned to work?

Q. On this date did you come in contact with inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright?

Q. Did you speak to Mr. Wright?

Q. Describe the conversation?

Q. Did you feel Mr. Wright was in need ~~of medical~~ attention? ← sweat –

Q. Were you present during MA Hake's 2nd evaluation of Mr. Wright?

Q. What did you witness?

Q. Did MA Hake share her assessment of inmate Wrights condition?

Q. Did MA Hake give any special instructions in regards to Mr. Wright?

Q. Did she contact Dr. Malvasi?

Q. Did she inform the shift supervisorof her findings?

On 05/05/2017 this R/O reported to booking after feeding and was advised by officer Yeager that inmate Gregory Wright had to be taken to the third floor. Officer Yeager and I reported to 2C-pod and approached Inmate Wright who was lying in a porta bunk to the right side of the door. I could see what I believe to be vomit in front of his bunk and Inmate [redacted] mopping it up. Officer Yeager and I tried to get inmate Wright to stand up so we could move him to the third floor. Inmate Wright would not stand up and appeared to be going through withdrawals. Officer Yeager and I reported to medical and brought the wheel chair from medical to 2C-pod. Inmate Wright would not stand up and get in the wheel chair but would open his eyes sometimes when talking to him. I believed inmate Wright did not want to get up because of him withdrawing. Inmate [redacted] grabbed inmate Wright under the arms and picked him up and assisted Officer Yeager and I in getting him in the wheelchair. I wheeled inmate Wright out of the pod in the wheelchair while officer Yeager pulled all of his belongings out. While transporting him down the hallway Inmate wright had to be repositioned in the wheel chair. While transporting inmate Wright he would push against the floor with his feet moving the wheelchair . Once in cell 3A-104 Officer Yeager and I placed his new set up on the bunk and advised Inmate wright to get in his bunk. Inmate Wright then stood up out of the wheel chair with the assistance Officer Yeager and I and we then helped him into his bunk. Once his bunk Inmate Wright repositioned himself and Officer Yeager and I exited the floor. Bowker

Benjamin Bowker

5-12-17

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 J. - 03

LOCATION 150 High St

DATE TIME 5-18 17 11:24

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Ben Bowker
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Questions for Benjamin Bowker:

Q. On 5-5-17 where were you assigned to work? Rover #4 2F [illegible]

Q. On this date did you come in contact with Inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright? 620 - assist. in Mong

Q Why was Mr. Wright moved?

Q. Were you informed of any medical issues or instructions?

Q. Did Mr. Wright speak?

Q. Did you inform your supervisor as to the condition of Mr. Wright before you moved him?

Q. Did you feel Mr. Wright was in need of emergency medical attention?

Q. How did inmate [redacted] become involved putting assisting Mr. Wright into the wheel chair?

Q. When you took Mr. Wright to the third floor did he get out of the wheelchair himself?

Q. Did he say anything at this time?

Q. Did you brief the 3rd floor control officers as of Mr. Wright's condition?

On 05-05-17 at approximately 0415 Officer Washington called for available Officers and medical to come to the second floor c-pod for a possible seizure. When entering the pod inmate Gregory Wright was lying on his back and had appeared to have vomited. Inmate Wright was rolled onto his side to prevent him from choking and Medical Assistant Rachael Hake then attempted to get his vitals. Inmate Wright was moaning and would not hold still so I'm not sure if a blood pressure was taken. Inmate Wright's pulse ox was taken and Medical Assistant Hake stated his heart rate was a little high but that was normal for someone detoxing from heroin. All Officers and medical then left the floor.

At approximately 0620 Sgt. Tomko called booking and advised inmate Wright would not be riding out to prison and needed to be transported to the 3rd floor for medical lockdown. When Officer Bowker arrived in booking I advised him of this and we went to the 2nd floor for the transport. When we arrived on the second floor inmate Wright was lying in his bunk and there was what appeared to be vomit on the floor. Inmate Wright would not stand up and seemed to be ignoring all requests to do so. Inmate Wright would just look at us and turn his head away. It was then decided that the wheel chair would be needed for transport. Officer Bowker and I then went to medical and got it. We returned to c-pod and inmate Wright still would not stand up. Inmate [redacted] then assisted Officer Bowker and myself with lifting inmate Wright into the wheel chair. Officer Bowker then transported him out of the pod while I grabbed all of his personal belongings. Once in the hallway inmate Wright had to be repositioned because he was sliding down in the wheel chair. When we got into the elevator I asked inmate Wright "what was going on" and he just looked up at me. Inmate Wright had his feet on the floor and was pushing the wheel chair back and forth slightly. When we arrived on the 3rd floor we entered 3A-104 and I placed a new set up on the bunk for him. Inmate Wright then stood up with assistance from Officer Bowker and myself and sat down on the bunk. After inmate Wright was sitting down on the bunk he was able to lay down and roll onto his side. Officer Bowker and I then left the floor.

5-12-17

Timothy Yeager

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER 1A17 J - 03

LOCATION 150 High St

DATE TIME 5-18-17 -

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Timothy Yeager
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shaw
PRINTED NAME

Questions for Tim Yeager

Q. On 5-5-17 where were you assigned to work?

Q. On this date did you come in contact with inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright?

Q. when responding to the 0415 medical call for assistance, who was present?

Q. What did you see when you arrived at the scene?

Q. Was inmate Wright Conscious?

Q. Did inmate Wright Speak?

Q. What action did MA Hake take?

Q. Did MA Hake share her assessment of inmate Wrights condition?

Q. Did she contact Dr. Malvasi?

Q at 0620 Why was Mr. Wright moved?

Q. Were you informed of any medical issues or instructions?

Q. Did Mr. Wright speak?

Q. Did you inform your supervisor as to the condition of Mr. Wright before you moved him?

Q. Did you feel Mr. Wright was in need of emergency medical attention?

Q. How did inmate [redacted] become involved putting assisting Mr. Wright into the wheel chair?

Q. When you took Mr. Wright to the third floor did he get out of the wheelchair himself?

Q. Did he say anything at this time?

Q. Did you brief the 3rd floor control officers as of Mr. Wright's condition?



# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA17 J - 03

LOCATION 150 High St

DATE TIME 5-18-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Christopher Zadroski
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Officer Christopher J. Zadroski

Gregory Wright Statement

May 15, 2017

On May 3rd 2017 I Officer Christopher Zadroski was scheduled as a Booking Rover. On that date I was the Officer who changed out Inmate Gregory Wright and transported him to his housing unit which was FSJ 2C-Pod on the floor. While I was changing out Inmate Wright he had mentioned that he was recently in the Hospital for blood clots. At that time I asked Inmate Wright if he was checked out by the medical staff in which he stated "Yes" I also asked Inmate Wright if he had any medication with him when he arrived to the facility in which he stated "Yes, the nurse has the medications." Inmate Wright was transported to his housing unit without incident.

On May 3rd 2017 I Officer C. Zadroski was scheduled to perform Headcount and feed the second floor. Inmate Wright was standing and present during feeding and received his dinner tray.

On May 4th 2017 I Officer C. Zadroski was scheduled to perform first half watch tours. On my second watch tour, Officer Watson who was working the control pod advised me to check on Inmate Gregory Wright to see if he was ok, he further stated that he was going to be transported down to medical by Officer A. Zadroski by wheelchair. I asked Inmate Wright what was wrong and he stated "I don't know I don't feel good I've been puking." I remained in the pod until Officer A. Zadroski and Ochsnebine arrived on station to transport him to medical.

I did not have any further contact with Inmate Gregory Wright.

Christopher J. Zadroski #50

Questions for Chris Zadroski

Q. On 5-3-17 what were your assigned job duties.

Q. Did you interact with inmate Greg Wright?

Q. Prior to transporting inmate Mr. Wright were you given any specific instructions as to his housing?

Q Medical needs?

Q. Any increased monitoring?

Q. While transporting inmate Wright did you question his medical condition or needs?

Q. Did you conduct headcount on this day as well?

Q. What was Mr. Wrights condition at this time?

Q. On 5-4-17 what were your assigned job duties.

Q. During your watch tour did you have interaction with Mr. Wright?

Q. What action did you take?

Officer Matthew Ty Watson

Statement

05/17/2017

On May 4, 2017, I was working afternoon shift on 2nd floor. Sometime before 1600 an inmate from 2c-pod, precisely whom I can't recall, but this inmate informed me that Inmate Gregory Wright was vomiting, could barely walk and needed to see medical. I informed medical about the situation. Medical Assistant Bethany Lobdell was on duty, she instructed me to have him sent down with the 1500 medical transport. At 1608 Officer Anthony Zadroski arrived to transport Inmate Wright. Inmate Wright claimed he could not walk and requested a wheel chair. Officer Zadroski requested a wheel chair and another officer brought one after a short duration. Officer Zadroski transported Inmate Wright along with Inmate [redacted] from 2a-pod. Officer Zadroski returned them both at 1629. After this medical transport I had no other interactions with inmate Wright or any other inmates on his behalf. As far as I can recall Inmate Wright stayed in his bunk for the duration of the shift.

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 - J - 03

LOCATION 150 High St

DATE TIME 5-18-17 12:03

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Matthew watson
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shaf
PRINTED NAME

Questions for Matt Watson

Q. On 5-4-17 where were you assigned to work?

Q. Was inmate Greg Wright housed on your floor? Where?

Q. Did you notice anything unusual with inmate Wright during your shift? 3

Q. Did you speak to inmate Wright?

Q. Did medical see inmate Wright during your shift?

Q. Did medical give any special instructions regarding Mr. Wright?

1206

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER 1917-5 - 03

LOCATION 15th High St

DATE TIME 5-18-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature] SIGNATURE OF EMPLOYEE — Douglas J Machingo PRINTED NAME

[signature] SIGNATURE OF INVESTIGATOR — Eric Shaz PRINTED NAME

Questions for Doug Machingo:

Q. On May 3, 2017 what were your assigned job duties?

Q. Did you book in inmate Greg Wright?

Q. Why was he being booked in?

Q. Was he a walk in commitment?

Q. What was the general condition of Mr. Wright?

Q. Did Mr. Wright indicate any medical issues? Blood 11:PM

Q. Was Mr. Wright in need of emergency medical attention?

Q. Was Mr. Wright bringing in any medications?

Q. Did you summons medical personnel?

Q. Who arrived?

Q. Did she assess inmate Wright?

Q. Did medical place any special orders or instructions regarding special housing?

Q. ....increased security rounds?

Q. Was anything out of the ordinary learned which would should have been documented with an incident report?

Q. On 5-4-17 what were your assigned job duties?

Q. Did you have any interaction with inmate Wright?

Q. On 5-5-17 what were your assigned job duties?

Q. Did you have any interaction with inmate Wright?

Q. Did you conduct Cell check/headcount in 3A pod?

Q. Where you aware why Mr. Wright was now on 3A?

Q. What was his condition during headcount?

Q. What was the condition of his cell?

Q. Did you notify your supervisor of his/the cells condition?

Q. Were you assigned med pass in 3A pod?

Q. What was his condition during med pass?

Q. Did he receive any medication(s)?

Q. Did he speak?

Q. What was the condition of his cell?

Q. Did you feel Mr. Wright was need of emergency medical treatment?

Q. Did you feed in 3A pod?

Q. Who Discovered Mr. Wright unresponsive

Q. What action you take?

LT WIX, TRACY (19) (05/05/2017 02:20:35 PM)
SGT ECKENEOD, ROBERT (094) (05/05/2017 02:36:06 PM)
SGT NICHOLS, RICK (14) (05/05/2017 02:40:54 PM)
CO REED, KRISTA (82) (05/05/2017 02:44:40 PM)
CO LUCIC, BONNIE (65) (05/05/2017 02:50:14 PM)
CO PAPPADA, DAVID (60) (05/05/2017 02:55:30 PM)
CO MCBRIDE, ARIANA (44) (05/05/2017 02:57:47 PM)
LT WIX, TRACY (19) (05/05/2017 03:09:36 PM)
LT WIX, TRACY (19) (05/06/2017 10:36:02 AM)

Trumbull 000099

While stationed on Tower 3 on May 5th, 2017 at approximately 1200, Officers Reed and Lucic entered 3A pod to conduct headcount and pass out trays to the inmates. At approximately 1201, Officer Machingo also entered to feed. At approximately 1201 Officer Reed radioed into tower 3 to open 104 because Inmate Gregory Wright was unresponsive. Cell door was opened Officer Reed and Lucic entered the cell to check inmate Wrights well-being and inmate Wright appeared to be unresponsive. At approximately 1202, Officer Reed radioed for all officers and medical to report to 3A pod. Officer Eckenrod advised "do you need a defib?" and Officer Reed stated "yes". At approximately 1204, Medical Assistant Jesse along with Officers Eckenrod, Watkins, Vecchio and Sgt. Nichols arrived on station. At approximately 1205 administered use of the defibrillator on Inmate Wright. Officer Lucic retrieved the Ambu Bag gave it to Officer Eckenrod. This reporting Officer observed Officer Eckenrod performing CPR on Inmate Wright after the defibrillator ran it's cycle at approximately 1207. Lieutenant Lester arrived on station at approximately 1211. At approximately 1213, Chief Dragovich arrived on station. At approximately a second Med Star unit arrived on station. At approximately 1214, Med Star arrived on station and continued performing CPR on Inmate Wright. At approximately 1218, Deputy Mcbride arrived on station. At Approximately 1223, Sheriff Monroe arrived on station. At approximately 1225, Detectives Marcello, Yannucci Chief Palmer and Captain Villanueva arrived on station. At approximately 1227, Inmate Wright was taken off of tower 3. Nothing further to report. Pappada #47

Thursday, May 18, 2017 06:57 AM

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER 1A17-J - 03

LOCATION 150 High St.

DATE TIME 5-18-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

DAVID PAPPADA
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Questions for Dave Pappada

Q. On 5-5-17 where were you assigned to work?

Q. Who did you relieve?

Q. Were you briefed by the previous shift?

Q. Were you briefed about inmate Gregory Wright being moved their around 0635?

Q. Were you briefed as to any medical observations or special instructions concerning Mr. Wright?

Q. was there any indicators/stickers labeled on the control panel regarding Mr. Wright?

Q. Did you review incident reports from the previous twenty four hours?

Q. Did you review CO Guysinger's incident report from the previous shift on Gregory Wright?

Q. On this date did you come in contact with inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright?

Q. Did you speak to Mr. Wright? No sir

Q. if so Describe the conversation?

Q. Did you feel Mr. Wright was in need of medical attention?

Q. Did you conduct watch tours of Mr. Wright's housing unit?

Q. What type of watch was Mr. Wright on?

Q. What did you witness during these checks? Covered up, Blood on Floor - How was He positioned

Q. Did you notice anything unusual with the condition of his cell?

Q. When medical was called during feeding what did you witness?

LT WIX, TRACY (19) (05/05/2017 02:20:35 PM)
SGT ECKENEOD, ROBERT (094) (05/05/2017 02:36:06 PM)
SGT NICHOLS, RICK (14) (05/05/2017 02:40:54 PM)
CO REED, KRISTA (82) (05/05/2017 02:44:40 PM)
CO LUCIC, BONNIE (65) (05/05/2017 02:50:14 PM)
CO PAPPADA, DAVID (60) (05/05/2017 02:55:30 PM)
CO MCBRIDE, ARIANA (44) (05/05/2017 02:57:47 PM)
LT WIX, TRACY (19) (05/05/2017 03:09:36 PM)
LT WIX, TRACY (19) (05/06/2017 10:36:02 AM)

On May 5, 2017 at approximately 1200 this reporting officer and officer Krista Reed entered 3A pod to conduct a watch tour and assist with feeding. Officer Reed opened inmate Gregory Wright's feeding hatch and set the tray down on the hatch. Officer Reed then called out to inmate wright to come and get his tray. Inmate wright was nonresponsive so Officer Reed then tapped the cell door with the hatch key and inmate Wright still did not respond. Officer Reed then called for the door to be opened and this reporting officer and Officer Reed entered the cell. Officer Reed placed her hand on inmate Wright's arm and nudged him. Inmate Wright was non-responsive. Officer Reed radioed for medical and all available officers. Officer Eckenrod and medical assistant Jesse arrived on station moments later used the defilbulator and started CPR. Officers Nichols, Machingo, Vecchio and Watkins arrived on station. I exited the pod to assist Officer Machingo in feeding lunch to the rest of the floor. I had no further contact with inmate Wright but I conducted watch tours in 3A Pod at 1210, 1230.

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17-5-03

LOCATION 150 High St.

DATE TIME 5-18-17 - 1238

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Bennie Lucic
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Questions for Bonnie Lucic

Q. On 5-5-17 where were you assigned to work? 3B Dovid

Q. Who did you relieve? B.V/ – P...

Q. Were you briefed by the previous shift?

Q. Were you briefed about inmate Gregory Wright being moved their around 0635? 2

Q. Were you briefed as to any medical observations or special instructions concerning Mr. Wright? 1

Q. was there any indicators/stickers labeled on the control panel regarding Mr. Wright?

Q. Did you review incident reports from the previous twenty four hours?

Q. Did you review CO Guysinger's incident report from the previous shift on Gregory Wright?

Q. On this date did you come in contact with inmate Gregory Wright?

Q. Describe what interaction you had with Mr. Wright?

Q. Did you speak to Mr. Wright? No

Q. if so Describe the conversation?

Q. Did you feel Mr. Wright was in need of medical attention? NO

Q. Did you conduct watch tours of Mr. Wright's housing unit?

Q. What type of watch was Mr. Wright on?

Q. What did you witness during these checks? covered up, How, was he pacing Blood?

Q. Did you notice anything unusual with the condition of his cell?

Q. Describe what happened during feeding? J

**NARRATIVE SUPPLEMENT**

INCIDENT NUMBER Trumbull 000107

| OFFICER NAME | NARRATIVE DATE | NARRATIVE TIME |
|---|---|---|
| CO REED, KRISTA (82) (05/05/2017 02:44:40 P | 05/05/2017 | 02:44:40 PM |

COMMENTS

ON MAY 5, 2017 AT 1158 I OFFICER KRISTA REED ARRIVED ON TOWER THREE TO PASS OUT LUNCH TRAYS. I WALKED TO THE CONTROL POD TO GET THE KEYS AND HEAD COUNT BOOK TO CONDUCT FEEDING. I ENTERED A-POD AT APPROXIMATELY 1200 AND BEGAN FEEDING THE BOTTOM CELLS WHILE MY PARTNER OFFICER MACHINGO FED THE TOP. I OPENED THE HATCH OF CELL A-105 AND SET HIS (GREGORY WRIGHT) TRAY ON THE HATCH, YELLED FOR LUNCH AND MOVED TO CELL A-106 TO GIVE THE INMATE HOSED IN THAT CELL HIS TRAY. I NOTICED THAT THE INMATE IN A-105 STILL HAD NOT GOTTEN HIS TRAY SO I WALKED BACK TO HIS CELL AND BANGED ON HIS DOOR WITH THE KEYS I HAD IN MY HAND AND HE STILL DID NOT RESPOND. AT APPROXIMATELY 1201 I CALLED VIA RADIO FOR THE CONTROL POD TO OPEN HIS CELL DOOR. I ENTERED HIS CELL TO SEE HIM LYING ON HIS STOMACH WITH NO BLANKETS AND AT THAT TIME NOTICED ALL THE BLOOD ON THE FLOOR COMING FROM THE INMATE'S MOUTH AND NOSE. THE BLOOD WAS EXTREMELY BROWN IN COLOR AND PUDDLED ON THE FLOOR. I TOUCHED HIS BACK AND HE WAS STIFF TO THE TOUCH, I THEN FELT FOR A PULSE ON HIS RIGHT WRIST AND WAS NOT ABLE TO FIND ONE. I CALLED AT 1202 VIA RADIO FOR MEDICAL AND ALL AVAILABLE OFFICERS TO REPORT TO THE THIRD FLOOR. AT 1204 MEDICAL ASSISTANT JESS CLAY SGT. NICHOLS AND OFFICERS ECKENROD, VECCHIO, AND WATKINS ARRIVED ON STATION WITH THE AED MACHINE. OFFICER ECKENROD MYSELF AND MEDICAL ASSISTANT CLAY WERE IN INMATE WRIGHT'S CELL AND TURNED HIM OVER ONTO HIS BACK TO BEGIN LIFE SAVING MEASURES. OFFICER ECKENROD AND I CUT HIS SHIRT DOWN THE MIDDLE AND MEDICAL ASSISTANT

CO LUCIC, BONNIE (65) (05/05/2017 02:50:14 PM)
CO MCBRIDE, ARIANA (44) (05/05/2017 02:57:47 PM)
CO PAPPADA, DAVID (60) (05/05/2017 02:55:30 PM)
CO REED, KRISTA (82) (05/05/2017 02:44:40 PM)
LT WIX, TRACY (19) (05/05/2017 02:20:35 PM)
LT WIX, TRACY (19) (05/05/2017 03:09:36 PM)
LT WIX, TRACY (19) (05/06/2017 10:36:02 AM)
SGT ECKENEOD, ROBERT (094) (05/05/2017 02:36:06 PM)
SGT NICHOLS, RICK (14) (05/05/2017 02:40:54 PM)

Trumbull 000108

On May 5, 2017 at 1158 I officer Krista Reed arrived on tower three to pass out lunch trays. I walked into the control pod to get the keys and head count book to conduct feeding. I entered A-pod at approximately 1200 and began feeding the bottom cells while my partner officer Machingo fed the top. I opened the hatch of cell A-105 and set his (Gregory Wright) tray on the hatch; yelled for lunch and moved to cell A-106 to give the inmate hosed in that cell his tray. I noticed that the inmate in A-105 still had not gotten his tray so I walked back to his cell and banged on his door with the keys I had in my hand and he still did not respond, at approximately 1201 I called via radio for the control pod to open his cell door. I entered his cell to see him lying on his stomach with no blankets and at that time noticed all the blood on the floor coming from the inmate's mouth and nose. The blood was extremely brown in color and puddled on the floor. I touched his back and he was stiff to the touch, I then felt for a pulse on his right wrist and was not able to find one. I called at 1202 via radio for medical and all available officers to report to the third floor. At 1204 medical assistant Jess Clay Sgt. Nichols and officers Eckenrod, Vecchio, and Watkins arrived on station with the AED machine. Officer Eckenrod myself and medical assistant Clay were in inmate Wright's cell and turned him over onto his back to begin life saving measures. Officer Eckenrod and I cut his shirt down the middle and medical assistant Clay and Eckenrod applied the Automated External Defibulator (AED) and began chest compressions. The AED machine was not picking up a pulse and there was not enough room inside the cell so officers Eckenrod and Watkins moved inmate Wright to the floor in the day area to enable everyone to continue life saving measures. Eckenrod, Watkins and I all took turn preforming chest compressions while medical assistant Clay was giving respiratory breaths with the Ambu bag until Med Star arrived at 1214. Med Star continued to perform CPR on him until they left the floor at 1227. #46

Krista Reed

Thursday, May 18, 2017 06:49 AM

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 - J - 03

LOCATION 150 High

DATE TIME 5-18-17 1259

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Krista Reed
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shaw
PRINTED NAME

Questions for Krista Reed

Q. On 5-5-17 what were your assigned job duties? Roving

Q. Did you have any interaction with inmate Wright?

Q. Did you conduct Cell check/headcount in 3A pod?

Q. Where you aware why Mr. Wright was on 3A?

Q. What was his condition during headcount?

Q. What was the condition of his cell?

Q. Did you notify your supervisor of his/the cells condition?

Q. Did you feel Mr. Wright was need of emergency medical treatment?

Q. Did you feed in 3A pod?

Q. Were you the officer who discovered Mr. Wright unresponsive?

Q. What action you take?

Q. Describe the condition of the cell?

MA Jesse – H

CO LUCIC, BONNIE (65) (05/05/2017 02:50:14 PM)
CO MCBRIDE, ARIANA (44) (05/05/2017 02:57:47 PM)
CO PAPPADA, DAVID (60) (05/05/2017 02:55:30 PM)
CO REED, KRISTA (82) (05/05/2017 02:44:40 PM)
LT WIX, TRACY (19) (05/05/2017 02:20:35 PM)
LT WIX, TRACY (19) (05/05/2017 03:09:36 PM)
LT WIX, TRACY (19) (05/06/2017 10:36:02 AM)
SGT ECKENEOD, ROBERT (094) (05/05/2017 02:36:06 PM)
SGT NICHOLS, RICK (14) (05/05/2017 02:40:54 PM)

Trumbull 000112

Approximately at 1202 on 05/05/2017 Officer Reed radioed for assistance on the 3rd floor for a medical problem. I radioed Officer Reed asking what they had. Officer Machingo advised to report 3rd floor. I asked if they needed the AED. He stated yes. I retrieved the AED from Central control. Medical assistant Clay, Sergeant Nichols, Officer Watkins, Vecchio, and I (Eckenrod) responded to 3rd floor A pod. Sgt Nichols called Central control Officer Hazinakis to notify an ambulance service to report to the jail. Upon arriving into the pod I was advised by officers Reed and Machingo of an unresponsive male in cell 3A105. MA Clay and I entered into the cell. The inmate was lying prone on his bunk. His head was facing towards the window. I approached the inmate calling out his name. No response. I observed a pool of blood on the floor. I checked his Neck for a pulse. No pulse located. I turned the inmate over and MA Clay assisted with placing the AED patches on him. The AED conducted assessment and advised to begin CPR. I began CPR on inmate Wright. Due to the limited room I decided to move the inmate out of the cell for the safety of all involved.

Inmate Wright was placed outside his cell door. I continued with chest compressions and MA Clay was giving rescue breaths. This continued for a cycle. The AED conducted a second assessment. The AED advised to continue CPR. Officer Watkins at this time took over the CPR. Officer Watkins continued with the CPR until relieved by a unit from Med Star.

Chief Deputy Dragovich, Major Palmer, and LT Lester arrived on station. Med Star EMS took over treatment of inmate Wright. Med Star units and I placed inmate Wright on the gurney. I took back over CPR so the EMS units could continue their treatment. Inmate Wright was transported from the pod to the sally port. Inmate Wright was placed in the ambulance and transported to St Joes.

NARRATIVE SUPPLEMENT

INCIDENT NUMBER Trumbull 000114

| OFFICER NAME | NARRATIVE DATE | NARRATIVE TIME |
|---|---|---|
| SGT ECKENEOD, ROBERT (094) (05/05/2017 | 05/05/2017 | 02:36:06 PM |

COMMENTS

APPROXIMATELY AT 1202 ON 05/05/2017 OFFICER REED RADIOED FOR ASSISTANCE ON THE 3RD FLOOR FOR A MEDICAL PROBLEM. I RADIOED OFFICER REED ASKING WHAT THEY HAD. OFFICER MACHINGO ADVISED TO REPORT 3RD FLOOR. I ASKED IF THEY NEEDED THE AED. HE STATED YES. I RETRIEVED THE AED FROM CENTRAL CONTROL. MEDICAL ASSISTANT CLAY, SERGEANT NICHOLS, OFFICER WATKINS, VECCHIO, AND I (ECKENROD) RESPONDED TO 3RD FLOOR A POD. SGT NICHOLS CALLED CENTRAL CONTROL OFFICER HAZINAKIS TO NOTIFY AN AMBULANCE SERVICE TO REPORT TO THE JAIL. UPON ARRIVING INTO THE POD I WAS ADVISED BY OFFICERS REED AND MACHINGO OF AN UNRESPONSIVE MALE IN CELL 3A105. MA CLAY AND I ENTERED INTO THE CELL. THE INMATE WAS LYING PRONE ON HIS BUNK. HIS HEAD WAS FACING TOWARDS THE WINDOW. I APPROACHED THE INMATE CALLING OUT HIS NAME. NO RESPONSE. I OBSERVED A POOL OF BLOOD ON THE FLOOR. I CHECKED HIS NECK FOR A PULSE. NO PULSE LOCATED. I TURNED THE INMATE OVER AND MA CLAY ASSISTED WITH PLACING THE AED PATCHES ON HIM. THE AED CONDUCTED ASSESSMENT AND ADVISED TO BEGIN CPR. I BEGAN CPR ON INMATE WRIGHT. DUE TO THE LIMITED ROOM I DECIDED TO MOVE THE INMATE OUT OF THE CELL FOR THE SAFETY OF ALL INVOLVED.

INMATE WRIGHT WAS PLACED OUTSIDE HIS CELL DOOR. I CONTINUED WITH CHEST COMPRESSIONS AND MA CLAY WAS GIVING RESCUE BREATHS. THIS CONTINUED FOR A CYCLE. THE AED CONDUCTED A SECOND ASSESSMENT. THE AED ADVISED TO CONTINUE CPR. OFFICER WATKINS AT THIS TIME TOOK OVER THE CPR. OFFICER WATKINS CONTINUED WITH THE CPR UNTIL RELIEVED BY A UNIT FROM MED STAR.

CHIEF DEPUTY DRAGOVICH, MAJOR ~~PALMER, AND LT~~ LESTER ARRIVED ON STATION. MED STAR EMS TOOK OVER TREATMENT OF INMATE WRIGHT. MED STAR UNITS AND I PLACED INMATE WRIGHT ON THE GURNEY. I TOOK BACK OVER CPR SO THE EMS UNITS COULD CONTINUE THEIR TREATMENT. INMATE WRIGHT WAS TRANSPORTED FROM THE POD TO



# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 J - 03

LOCATION 150 High St-

DATE TIME 5-18-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Robert Eckwurd
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Sharp
PRINTED NAME

Trumbull 000116

NARRATIVE SUPPLEMENT

| INCIDENT NUMBER |
|---|
| |

| OFFICER NAME | NARRATIVE DATE | NARRATIVE TIME |
|---|---|---|
| LT WIX, TRACY (19) (05/06/2017 10:36:02 AM) | 05/06/2017 | 10:36:02 AM |

COMMENTS

MAY 5, 2017 AT A ABOUT 1200 PM THIS OFFICER CO WATKINS HEARD RADIO TRAFFIC FROM OFFICER REED STATING T SHE NEED OFFICER TO COME TO THE 3RD FLOOR FOR ASSISTANCE FOR A MEDICAL EMERGENCE . I ALONG WITH OFFICERS ECKENROD, VECCHIO, MEDICAL ASSISTANT CLAY AND SGT NICHOLS RESPONDED THE 3RD FLOOR . WHEN WE ARRIVED TO THE FLOOR WE WENT TO CELL 3A 105 A SAW AN INMATE LAYING ON HIS BED UNRESPONSIVE AND COVERED IN BLOOD . THE INMATE WAS GREGORY WRIGHT. OFFICER ECKENROD GRABBED THE ADE STARTED REMOVING INMATE WRIGHTS SHIRT ALONG WITH OFFICER REED , WHO WAS ALREADY ON THE 3RD FLOOR . ONCE INMATE WRIGHT SHIRT WAS REMOVED OFFICER ECKENROD PLACED THE ADE PATCHES ON INMATE CHEST AND STARTED THE ADE MACHINE . THE ADE MACHINE STATED TO START COMPRESSION . OFFICER ECKENROD STARED COMPRESSION AND NURSE CLAY WAS AMBU BAG FOR BREATHS. OFFICER ECKENROD COMPLETED SEVERAL CYCLES OF COMPRESSION WHEN HE

INCOMP HC

Trumbull 000116

# Trumbull County SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17 J - 03

LOCATION 150 High St

DATE TIME 5-18-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

[signature]
SIGNATURE OF EMPLOYEE

Yarle Watkins
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shaw
PRINTED NAME

Questions for Yale Watkins

Q. On 5-5-17 where were you assigned to work?

Q. On this date did you respond to a medical incident on 3 A pod involving Inmate Gregory Wright?

Q. Can you describe the incident?

On May 4th 2017 I was posted on the 2nd floor control pod on midnight shift and had no contact with inmate Gregory Wright. On the following day May 5th, I was posted on the 3rd floor mid night shift and inmate Gregory Wright was transferred from the second floor to the 3 A pod at 0635 into cell number 104. I had just finished the 0630 ten minute tour when C. O. Yeager and C. O. Bowker arrived with inmate Gregory Wright who was transported via wheel chair. I did the 0640 tour and the 0650 tour and inmate Gregory Wright was in his cell laying on his bunk. This was a visual contact. I had no verbal contact with inmate Gregory Wright during these two tours.

Bill Millik

5/16/2017

Bill Millik

Corrections Officer

# Trumbull County
# SHERIFF'S OFFICE

## DISCIPLINARY INTERVIEW ADVICE OF RIGHTS

[Garrity v. New Jersey, 385 U.S. 493, 87S. Ct. 616 (1967)]

PERSONNEL INVESTIGATION NUMBER IA 17-3 - 03

LOCATION 150 High St-

DATE TIME 5-24-17

I am advising you that you are being questioned as part of an official investigation by the Sheriff's Office. You will be asked questions specifically and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and Constitution of this state and the Constitution of the United States, including your right not to be compelled to incriminate yourself and to have an attorney (or any person) of your choice present during questioning.

I further advise you that if you refuse to testify or answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in relation to subsequent departmental charges.

**I have heard and read the foregoing statement and understand that I will be subject to departmental charges should I refuse to answer questions dealing with the complaint under investigation. I retain the right to amend or change this statement upon reflection to correct any unintended mistake without subjecting myself to a charge of untruthfulness.**

William Millich
SIGNATURE OF EMPLOYEE

William Millic
PRINTED NAME

[signature]
SIGNATURE OF INVESTIGATOR

Eric Shay
PRINTED NAME

Questions for Bill Millik

Q. Did you work on 5-5-17?

Q. Where were you Assigned to work?

Q. Did you have any interaction with inmate Gregory Wright?

Q. Do you know why he was moved there?

Q. Was he on increased medical rounds?

Q. Did you brief dayshift about inmate Wright?

Q. Did you feel Mr. Wright was in need of emergency medical treatment?

NARRATIVE SUPPLEMENT

INCIDENT NUMBER Trumbull 000122

| OFFICER NAME | NARRATIVE DATE | NARRATIVE TIME |
|---|---|---|
| SGT NICHOLS, RICK (14) (05/05/2017 02:40:5 | 05/05/2017 | 02:40:54 PM |

COMMENTS

ON MAY 5, 2017 AT 1202HRS. OFFICER REED RADIOED FOR ASSISTANCE ON THE THIRD FLOOR. AS I, SERGEANT [illegible]OLS, WAS IN ROUTE WITH OFFICERS ECKENROD AND WATKIN, OFFICER MACHINGO ALSO RADIOED US TO THE THIRD FLOOR. I THEN ASKED HIM WHAT WAS NEEDED. OFFICER ECKENROD THEN ASKED VIA RADIO IF WE NEEDED TO BRING THE AED AND HE STATED YES.

WHEN WE ARRIVED ARRIVED ON THE THIRD FLOOR POD A CELL 105, I IMMEDIATELY SAW THE INMATE LYING ON THE BUNK AND HE APPEARED STIFF AND THERE WAS A LOT OF BLOOD LIKE FLUID COVERING THE FLOOR. OFFICER ECKENROD IMMEDIATELY CHECKED FOR A PULSE AND OFFICER REED STARTED TO CUT OF HIS CLOTHES TO GET THE AED MACHINE STARTED. OFFICER ECKENROD PLACED THE PADS ON INMATE WRIGHT'S CHEST. ONCE THE AED MACHINE WAS HOOKED UP IT STATED TO BEGIN CPR. OFFICER ECKENROD THEN STARTED CPR.

I WALKED AWAY TO CALL LT. WIX AND ADVISE HER OF THE SITUATION. I ADVISED HER THAT MED STAR WAS IN ROUTE AND THAT SHE NEEDED TO NOTIFY THE DETECTIVE YANUCCI. I, ALSO, NOTIFIED LT. KAINTZ FOR A TRANSPORT OFFICER TO FOLLOW THE SQUAD. I THEN WENT TO INTAKE FOR RESTRAINTS FOR THIS SUBJECTS TRANSPORT.

WHEN I ARRIVED BACK ON THE FLOOR OFFICER WATKINS WAS GIVING INMATE WRIGHT CPR. APPROX. 1213 CHIEF DRADOVICH ARRIVED ON THE THIRD FLOOR AND MED STAR ARRIVED ON THE FLOOR APPROX.1214 AND BEGAN TO WORK ON INMATE WRIGHT. THIS SERGEANT PLACED THE LEG RESTRAINTS ON THIS SUBJECT PER LT. LESTER FOR HIS TRANSPORT.

APPROX. 1217 THE SECOND SQUAD ARRIVED ON STATION TO HELP ASSIST WITH THE FIRST PAIR OF EMS. APPROX. 1227 HRS. MED STAR LEFT THE FLOOR WITH INMATE WRIGHT WHILE OFFICER ECKENROD CONTINUED THE CHEST COMPRESSIONS. I THEN REPORTED TO INTAKE TO GET INMATE WRIGHTS FILE AND START PRINTING UP INCIDENTS AND GETTING MEDICAL RECORDS FOR LT. WIX. THESE RECORDS WERE GIVEN TO LT. WIX AND SHERIFF MONROE.

SERGEANT NICHOLS

**NARRATIVE SUPPLEMENT**

INCIDENT NUMBER Trumbull 000123

| OFFICER NAME | NARRATIVE DATE | NARRATIVE TIME |
|---|---|---|
| CO MCBRIDE, ARIANA (44) (05/05/2017 02:57: | 05/05/2017 | 02:57:47 PM |

COMMENTS

...S REPORT WRITTEN BY OFFICER VECCHIO: AT DATE LISTED AND APPROXIMATELY 1200 HOURS THIS REPORTING ...CER (VECCHIO) WAS GETTING READY TO GO ON A BREAK WHEN OFFICER MACHINGO RADIOED FOR A COUPLE OFFICERS AND MEDICAL TO REPORT TO THE 3RD FLOOR FOR A MEDICAL EMERGENCY. THIS R/O ARRIVED ON THE THIRD FLOOR WITH OFFICERS: SGT. NICHOLS, OFFICER ECKENROD, OFFICER WATKINS AND OFFICER MANOFSKY AND MA JESSE CLAY. ONCE INSIDE THE HOUSING UNIT THIS R/O ALONG WITH OTHER NAMED OFFICERS MADE OUR WAY TOWARDS 3A-104 FOR AN UNRESPONSIVE MALE, (LATER IDENTIFIED AS GREGORY L. WRIGHT). THIS R/O IMMEDIATELY NOTICED A LARGE AMOUNT OF FLUID ON THE CELL FLOOR AND THE INMATE WAS NON-RESPONSIVE AND APPEARED TO BE IN THE EARLY STAGE OF RIGOR. MA JESSE CLAY ALONG WITH OFFICER ECKENROD IMMEDIATELY CHECKED FOR A PULSE AND SIGNS OF BREATHING. WHEN NEITHER A PULSE NOR BREATHING WAS FOUND OFFICER ECKENROD AND MA JESSE CLAY STARTED THE AED MACHINE ON THE SUBJECT AND CHEST COMPRESSIONS ALONG WITH RESCUE BREATHING AS WELL. CHEST COMPRESSIONS AND RESCUE BREATHING CONTINUED BY OFFICER WATKINS, ECKENROD AND REED UNTIL THE EMT'S ARRIVED ON THE FLOOR AND TOOK OVER.

Trumbull 000123

05/15/17

Monday

1500 hours

In regarding of the custody death of inmate Gregory Wright I officer Cintron do not recall any incidents regarding this inmate other than being transported to 2C-Pod by officer C. Zadroski while I was on station 05/03/17.

Bernice Cintron 5/15/17

Statement in reference to Inmate Gregory Wright

My interaction with Gregory Wright on 5-4-2017 while on watch tours was brief. While walking through the pod on my first or second watch tour I noticed the trash can next to inmate Wright where he was lying on a porta bunk. I asked why the trash can was there and an unknown inmate mentioned to me that inmate Wright was feeling sick. I asked inmate Wright if he was feeling ok and his response was "ya I'm cool". I advised inmate Wright that the nurse will be up shortly on med pass and if he wasn't feeling good to let her know when she came to the door. Inmate Wright responded with "cool thanks". I am unaware if he approached the med cart that night. That was my interaction with Gregory Wright on the reported date.

Nick Massary

5-12-17

I, Lt. Nicole O'Brien, was performing floor checks on 5-5-17. As I was heading down the hallway to the 301 I heard an officer call over the radio that they needed a rover to come to 2. I arrived on 2 and entered the tower where CO Guysinger was working. We started talking briefly and I saw CO Whitaker in 2C. I asked Guysinger what she was doing in there. He said that she was in there with the nurse. I asked who the nurse was seeing and he told me Gregory Wright. I asked him what was going on with him and he said something about vomit and I think he said something about Wright not feeling well. I then asked him which nurse was on duty and he said "Rachel". I pulled Wright's info up on JMS and saw that he came in to the jail 3 days prior. I looked at his charges and his medical information that was gathered when he was booked in. I noticed that there was an entry in the medical notes that he was recently in the hospital for blood clots. A few minutes later, medical assistant Rachel and CO Whitaker entered the tower. I asked what was going on with Wright and her assessment was he was going through heroin withdrawals. Rachel said his vitals were OK. I think she said something was "a little" high, but I can't remember whether it was his pulse or blood pressure. Guysinger asked something about the vomit, whether there was a lot or a little, and I believe she said there was a little bit of clear vomit. Before she left the tower she told Guysinger to call her if needed and she'd come back up. I then said, "And if he seems agitated or disoriented and can't stay in his bunk, call me and we'll move him to 3 and place him on 10 minute rounds." I eventually left the floor and continued on with floor checks. Based on the information gathered and given to me by medical, I physically did not see inmate Wright.

Later that night, we were preparing a prison trip. It was noticed then that Wright was scheduled to "ride" out to LCI.

Around 0415, I heard a call for medical to report to tower 2. Sgt. Tomko and all other available officers responded. I remained in booking. Tomko returned to booking and said Wright was incoherent and he thought he was too sick to go on the trip. Tomko and I discussed our options on whether or not he would go to prison and I said "Don't bring him down if he's that sick. Leave him up there for now. It won't take long for us to get him if he does end up going." MA Rachel was still on the floor so I hadn't heard anything from her.

A little after 0500, CO Whitaker entered booking and told me that Wright looked better. She said he was sitting up in his bunk, coherent and made eye contact with her. She asked him a couple questions and he answered them.

At 0600 I briefed Lt. Wix about Wright and what had transpired up to this point. I also informed her that he was on the list to ride out. I was off station around 0615.

Lt. N. OBrien

On 5/4/2017 I do not recall anything that happen on that date while doing head count and serving lunch on second floor c pod.

Joseph smith 5/17/2017 Joseph L Smith

I, Chaz Ochsenbine was scheduled to be with the Medical Assistant on 05/03/2017. I do not recall having any interaction with inmate Gregory Wright during medication pass on Tower 2. On 05/04/2017 Officer Anthony Zadroski was stationed with the medical assistant; he called for an available rover to bring a wheelchair to the second floor, so he could transport inmate Gregory Wright to medical. Officer A.Zadroski and I entered 2C-pod where he was housed on the floor. Inmate Gregory Wright stood up and sat in the wheelchair with no need for assistance. Inmate Gregory Wright was transported to medical by Officer A. Zadroski and I reported back to booking.

Chaz Ochsenbine

5-16-17

Trumbull County Jail

5/14/17

Reference: Gregory Wright

On 5/4/17, I was scheduled on watch tours for the first half of the day.  During the watch tours, I had no interaction with Inmate Gregory Wright.  Nothing out of the ordinary stood out during the watch tours.

Corrections Officer Burley

On May 5, 2017 I was stationed on tower three along with B. Millik for my midnight shift 2300-0700. During the end of my shift I received a phone call around 0630 to tower three stating that they were bringing and inmate up soon and what cell in A-pod do we have available. I conferred to Officer B. Millik over the intercom while he was in A-pod doing a partial tour for confirmation on an available cell; we agreed that A-104 was available. At 0635 Inmate Wright, Gregory L. was on station he came down the hallway and entered A-pod with Officers Yeager and Bowker. The lights and door was opened for the inmate and Officers. I Officer Powell did the last partial tour at 0650. Inmate Wright was not placed on 10 minute tours so I did not observe him during my partial tour nor had any physical or verbal contact. I was relieved of my duties about 0651 by Officer Pappada and Officer Lucic.

Zaneisha Powell

May 16, 2017

On May 4 2017 this C.O. (Basilon) was on watch tours from 2350 till 0310. I had watch tours at 2350, 0040, 0130 and 0220. During these watch tours, I noticed nothing out of the normal with any inmates in Tower 2 C-Pod nor did any inmate approach me with any complaints.

Michael Basilon
Corrections Officer

Trumbull 000131

ON 05/04/2017 I (CO HARSANY) WAS ASSIGNED TO WATCH TOURS DURING THE 2ND HALF OF MY SHIFT WHICH WERE THE HOURS OF 0300 TO 0700. DURING THOSE TOURS, I DID NOT NOTICE ANY PROBLEMS THAT WERE OUT OF THE ORDINARY WITH INMATE GREGORY WRIGHT, OR ANY OTHER INMATES HOUSED IN 2 C-POD, NOR DID HE OR ANY OTHER INMATE APPROACH ME WITH ANY COMPLAINTS THAT WOULD WARRANT MEDICAL ATTENTION.

RUDOLPH HARSANY (55)

5-15-2017

May 14th, 2017

Trumbull County Jail in reference to Gregory Wright

On May 4th, 2017, reporting officer, William A. Dreier, was schedule to conduct Head Count and deliver lunch trays on Tower 2 of the Trumbull County Jail. To the best of my knowledge, nothing altered me to the well-being with inmate Gregory Wright who was alive and responsive.

William A. Dreier Unit #72 [signature] 05-14-2017

On 05/04/2017 at approximately 1650 hours I (Officer Daley) was assigned to pass out dinner trays on the second floor. Using the book matching the inmates to the face sheet, trays were passed out. After calling inmate Gregory Wright 2C-floor, inmate Wright's bunk was against the wall to the right to the door, inmate Wright sat up his tray was handed to him and I continued passing out trays to the rest of the floor. I do not recall any other encounter with inmate Wright, inmate trays were collected and I exited the floor at approximately 1733 hours.

Jacob C. Daley #62

ON 5-4-2017 THIS OFFICER WAS WORKING DAYSHIFT STATIONED ON SECOND FLOOR, MR WRIGHT WAS IN C POD , THIS OFFICER HAD NO INTERACTION WITH MR WRIGHT. JAMES MILLIK

5-14-17

James Millik

Statement regarding inmate Gregory Wright:

To my knowledge I had no interactions with inmate Gregory Wright

Matthew Abbott

[signature]

5-19-2017

5/16/17

To whom it may concern,

On, May 3, 2017, this nurse was called to booking to assess Inmate Gregory Wright. Inmate stated he has blood clots in his legs, the rt. Leg has a dressing on it, he takes Xarelto and he uses "lots" of heroin (see booking assessment form). This nurse called Dr. Malvasi to get orders and wrote the orders in his chart and made a MAR. On May 4, 2017, this nurse seen Inmate Wright in the treatment room getting his dressing changed at approximately 3:30pm. This nurse heard inmate Wright tell MA Lobdell that he did not want any cream on his leg and just to put a clean dressing back on. Nothing further to report.

C. Ahart LPN

Carla S. Ahart LPN

Questions for MA Carla Oles

Q. Were you working on May 3, 2017?

Q. What hours were you scheduled?

Q. Were you summons to booking for Greg Wright?

Q. By who?

Q. What was inmate Wrights condition?

Q. Was he carrying any medications?

Q. What action did you take?

Q Was the shift supervisor notified of Mr. Wrights condition?

Q. Were any special medical instructions given to the shift supervisor regarding inmate Wrights care?

Q. Was he placed on medical observation?

Q. when a new bookin arrived that is on medication or has issues how is this passed on to incoming medical staff?

Q. Was Mr. Wrights information passed on to other medical staff?

Q. Were you working on May 4, 2017?

Q. Did you witness MA Lobdell treating inmate Wright?

Q. What did you witness?

Q. Did you have any other interaction with inmate Wright

To whom it may concern,

On Thursday May 4th 2017 about 430pm Inmate Gregory Wright came down to medical to get a wound on his leg cleaned and re-dressed. When Wright arrived at medical, he complained of having some nausea and vomiting. Nothing else was said about the consistency or any color variation of the vomit. Inmate Wright did say that he was coming off of heroin. His wound was cleaned and recovered and he was sent back upstairs to his pod. That night while on med pass Inmate Wright was given 2 ibu, 30ml of Maalox and an Imodium. Inmate Wright made no other mention of any other symptoms or any nausea or any other changes in his vomit.

Bethany Lobdell RMA

BLobdell

On 5-5-17 I (Rachel Hake RMA) I was called to the 2nd floor to C pod with the emergency bag for a possible seizure. When I arrived on station, I noticed Wright, Gregory lying on his back with a stream of puke coming from his boat. This inmate at the time was muttering and moaning. I immediately rolled the inmate on his side to prevent him from swallowing his tongue or ingesting his own vomit in case he was seizing out. I then activated smelling salts and began to place them under his nose. As soon as they were placed under his nose, he began to turn his head away and breathe through his mouth. I then tried to get vital signs. I/m would not stay still or cooperate with me enough to get a blood pressure reading. The female officer with me in the pod tried holding his arm in the correct position and he was still non-compliant. I stated to the I/m that I couldn't help him unless he cooperated and let me get vitals from him. I/m wouldn't answer any of my questions and when offered something for his stomach, he said no. I/m seemed to be withdrawing from opiates. I then set him up with our withdraw protocol (IBU, Imodium and Maalox) for AM med pass the following morning.

R. Hake

Questions for MA Rachael Hake

Q. State your name? Spell?

Q. and you were employed for Dr. Phillip Malvasi as what?

Q. How long had you worked for him?

Q. When you are summonsed for medical emergencies, describe what you do?

Q. Were you working on May 5, 2017?

Q. What hours were you scheduled?

Q. When you arrived on station were there any concerns passed on to you regarding Mr. Gregory Wright?

Q. At 0007 were you summonsed to 2c Pod for a medical incident involving Greg Wright?

Q. By who? Kens

Q. What did you see when you entered 2C?

Q. What action did you take?

    a. blood pressure check?

    b. Pulse ox?

    C. pulse?

    D. did Mr. Wright speak?

    E. Why weren't all the vitals taken? refused to be treated?

    F. What made you think it was a refusal?    Note in progress

    G. What is the procedure for medical staff if certain vitals are not obtained for what ever reason?

Q. What was your assessment of his condition? Withdrawal

Q. After your assessment did you feel Mr. Wright needed to be sent to the hospital?

Q Why not?

Q. Was dr. Malvasi called at this time?

Q. Why not?

Q Was the shift supervisor notified of Mr. Wright's condition?

Questions for MA Jesse Clay

Q. State your name? Spell?

Q. and you were employed for Dr. Phillip Malvasi as what?

Q. How long had you worked for him?

Q. Were you working on May 5, 2017?

Q. When you are summonsed for medical emergencies, describe what you do?

Q. If an assessment is incomplete? What do you do?

Q. When are you to call Dr. Malvasi?

Q. What is the procedure when a new person arrives who has medical issues?

Q. How do other MA's receive this information?

Q. On May 5, 2017 what hours were you scheduled?

Q. When you arrived on station were there any concerns passed on to you regarding Mr. Gregory Wright? 600

Q. Was he on ten minute medical rounds?

Q. Did you do med pass?

Q. Did he receive medication?

Q. Did he speak?

Q. Did you feed he was in need of emergency medical care?

Q. When you were summons to 3A during feeding....explain what happened?

Trumbull 000143

On May 5, 2017, I (Jessie L. Clay, RMA) was on morning med pass and went to Mr. Wrights cell at approximately 8:30 a.m. asking him if he wanted his meds. He moaned a little bit and just said "stomach acid" as he was on his right side facing wall, I replied with I have some Maalox here for you if you want it to help settle it a little bit, he then shook his head no. My officer (machingo) and I went and finished the rest of 3A pod and then went back to Mr. Wrights cell door and asked him again if he wanted his meds and he didn't answer but had rolled over to his other side.  At about noon I heard traffic over the radio for available officers and medical to report to three for an unresponsive inmate. Officer Eckenrod radioed if defibrillator was needed or not and they said yes.  We grabbed that and went up to three, I had arrived with Sgt. Nichols, Ecckenrod, Burley, and Vecchio caught the elevator off the second floor, we arrived on station to see Mr. Wright unresponsive and what looked to be blood coming from his mouth and/or nose all over wall from where his head had rested to the floor.  He had no pulse nor was he breathing we immediately rolled him over Eckenrod got defibrillator ready as I grabbed scissors and started cutting his shirt at angle on right side by wall I had difficulty getting scissors to cut being as I was at an awkward angle so Reed stepped in from the left side of eckenrod and myself and assisted with the cutting of shirt, I then grabbed ambu bag and got ready to start cpr when it was clear to do so from the defibrillator.  After a few rounds of cpr in cell we then moved the inmate out into the day area for more room and kept cpr going. The paramedics showed up and started doing cpr as well as I kept going with the ambu bag. I was then relieved at ambu bag by Eckenrod and that concluded my involvement.

Jessie L. Clay

Jessie L. Clay

05-11-2017