IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO EASTERN DIVISION

ESTATE OF GREGORY                CASE NO. 4:17-CV-02383
WRIGHT, ETAL.
  Plaintiff                 JUDGE B. PEARSON

VS.                                        MAG. JUDGE LIMBERT

            PLAINTIFF'S   OBJECTION
TRUMBULL COUNTY BOARD           TO DEFENDANT'S
OF COMMISSIONERS, ETAL.         MOTION FOR SUMMARY
  Defendants                JUDGMENT


   Now comes the Plaintiff, by and through the undersigned counsel, objecting to the

Defendant's motion for summary judgment for the reason that there are genuine issues of

material facts in existence regarding the claims asserted by the plaintiff that preclude the granting

of summary judgment to the Defendants and compels the court to send this matter to the trier of

fact for disposition.

TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES ……………………………………………….. i

II.   FACTS……………………………………………………………………….1

III.  ISSUES PRESENTED ……………………………………………………1

IV.  SUMMARY OF ARGUMENT………………………………………………… 2

V.    ARGUMENT  ……………………………………………………..………….2

   A.    Standard for Determining Motion for Summary Judgment………………………,,2

   B.    Contested Facts Preclude Summary Judgment for Defendant Hake.......................5

   C.    Contested Facts Preclude Summary Judgment for Defendant Lobdell…………...6

   D.    Contested Facts Preclude Summary Judgment Failure to Train/Supervise Claim  7

   E.    Dr. Tyler's Report in support of lack of Training/Supervision……..…………….14

VI.   CONCLUSION …………………………………………………………….16

VII.  APPENDICES

         Exhibit A           Expert Report of Dr. Melanie Tyler

         Table 1             Trumbull County Internal Affairs Investigation Summary

         Table 2             Trumbull County Internal Affairs Findings

         Table 3             Trumbull County Training and Supervision Deficiencies

         5120:1-7-02          Glossary of Terms

## Table of Authorities

**Cases:**

*Amerson v. Waterford, 562 Fed.Appx. 484(6th Cir. 2014)* ………………………………………………… 8

*Bertl v. City of Westland*, 2009 WL 247907 (6th Cir. 2009) ..................................................... 8, 15

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)…………………………5

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989)...................................................................................................................................9,14

*Clutters v. Sexton,* No. 1:05-cv-223, 2007 WL 3244437 (S.D. Ohio 2007)…………………..5

*Colbert v. Bd. of County Com'rs for Oklahoma County*, 414 F. App'x 156 (10th Cir. 2011 …6

*Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146, 150 (6th Cir. 1995)………………………….3

*Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285 (1976)…………………………………………….4

*Fagan v. City of Vineland, 22 F3d. 1283(3d Cir. 1994)*………………………………………..13

*Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002)*………………………………………………14

*Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. at 1979 (1994)……………………….…..4,7

*French v. Daviess County, Ky.*, 2010 WL 1780252 *2, (6th Cir. 2010)……………………...5

*Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir.1993)……………………………12*

*Graham ex rel. Estate of Graham v. Cnty. of Washtenaw, 358 F.3d 377, 383 (6th Cir.2004)……………………………………………………………………………………………12*

*Gray v. City of Detroit, 399 F.3d 612,617(2005)*……………………………………………………14

*In Re Southern Ohio Correctional Facility,* 166 F.R.D. 391 (S.D. Ohio 1996)……………..4

*Martin v. City of Broadview Heights, No. 1:08 CV 2165, 2011 WL 3648103, at *9–10 (N.D. Ohio Aug. 18, 2011)*…………………………………………………………………………………13

*McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)…………………………………...4

*Padula v. Trumbull County, etal. 4:10-CV-2876* ………………………………………………4,5

*Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985)………………………………………4

*Shadrick v. Hopkins Cty., Ky., 805 F3d.724, 737(6th Cir. 2015)*………………………… 9,10

*Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 560 (6th Cir. 2004)……..3

*Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003)…………………………………….4

*Speers v. County of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006)…………………………5

*Taylor v. Michigan Dept of Correction*, 69 F.3d 76, 81 (6th Cir. 1995)………………………5

*Terrance v. Northville Regional Psychiatric Hospital,* 286 F.3d 834, 841 (6th Cir. 2002) ..4,5

*Thomas vs. Cook County Sheriffs Department, 604 F. 3d 293, 305 (7th Cir. 2010)………..*14

*United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S. Ct. 993 (1962)……………………...3

*Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)…………………………………….4

*Winkler v. Madison County, Ky, 893 F.3d 877, 900 (2018)………………………………… 14*

*Woods v. Lecureux,* 110 F.3d 1215, 1223 (6th Cir 1997)……………………………………..4

Rules

Fed. R. Civ. P. 56 (c)…….3

OAC 4731-23…………..10

OAC 4731-23-02……….10,11

ORC 5120.10…………..8

5120:1-7-02…………….8

*Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003)……………………………………4

*Speers v. County of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006)…………………………5

*Taylor v. Michigan Dept of Correction*, 69 F.3d 76, 81 (6th Cir. 1995)………………………5

*Terrance v. Northville Regional Psychiatric Hospital*, 286 F.3d 834, 841 (6th Cir. 2002) ..4,5

*Thomas vs. Cook County Sheriffs Department, 604 F. 3d 293, 305 (7th Cir. 2010)……… …14

*United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S. Ct. 993 (1962)……………………...3

*Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)……………………………………4

*Winkler v. Madison County, Ky, 893 F.3d 877, 900 (2018)… … … … … … … … … … … … … 14

*Woods v. Lecureux,* 110 F.3d 1215, 1223 (6th Cir 1997)…………………………………….4

Rules

Fed. R. Civ. P. 56 (c)…….3

OAC 4731-23…………..10

OAC 4731-23-02……….10,11

ORC 5120.10…………..8

5120:1-7-02…………….8

## FACTS

Gregory Wright on, or about May 3, 2017, was incarcerated at the Trumbull County Jail in Warren, Ohio and in accordance with the policies and procedures of the Jail advised Jail personnel, including the on-site medical staff, of all of his medical condition, drug addiction and medications, specifically Xarelto a prescribed drug thinner.

On May 5, 2017, at approximately 00:29 hrs. G. WRIGHT was observed by both Defendant Trumbull County's Jail and Medical personnel to be in medical distress, and despite being called by the Corrections personnel as a result of their personal observations of the medical condition of Wright the medical staff medical assistant Lobdell failed to take any immediate medically responsible action although being aware that he was experiencing severe medical complications requiring immediate and comprehensive medical care.

Between the period of May 3, 20117 and May 5, 2017, while in the care and custody of the Trumbull County Jail medical Staff, G. WRIGHT was observed on multiple occasions in medical distress by medical assistants Hake and Lobdell who nevertheless ignored his medical condition and failed to contact emergency services or competent medical professionals as was reasonably and objectively necessitated, as documented by their own observations.

## ISSUES PRESENTED

A.  **Genuine issue of material fact as to whether the conduct of Medical Assistant Hake in  regard to inmate Wright posed substantial risk of serious harm and precluded grant of summary judgment as to Defendant Rachel Hake**

B.  **Genuine issue of material fact as to whether the conduct of Medical Assistant Lobdell in regard to inmate Wright posed substantial risk of serious harm and precluded grant of summary judgment as to Defendant Bethany Lobdell**

C.  **Was the need for more or different training and supervision so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the Defendant Malvasi can reasonably be said to have been deliberately indifferent to the need of the inmate Wright and others to whom the Defendant had a constitutional obligation**

1

SUMMARY OF ARGUMENT

The defendant Medical Assistants Hake and Lobdell exercised deliberate indifference in regard to the medical care of Wright despite their subjective observations of Wright's medical distress. Despite the existence of obvious serious medical condition recognized as opiate withdrawal and their subjective observations and knowledge of the risk of serious injury they were deliberately indifferent as evidenced by their failure to provide adequate treatment and their failure to contact and seek guidance from competent and qualified licensed medical professionals, i.e. Dr. Malvasi or Carla Ahart, LPN, or send to an emergency facility in order to have possibly prevented the death of Wright.

Dr. Malvasi failed to train the medical staff at Trumbull jail as evidenced by the deposition of Defendants Hake and Lobdell who exceeded the scope of their certifications as unlicensed medical personnel by untrained and invalid assessments of Wright's condition, the deposition of Carla Ahart, LPN, trainer and supervisor of the medical assistants, who states that there was no formal training and Dr. Malvasi who admittedly left all training responsibilities to Ahart. Although training need not only be in a classroom setting it must be of such a type and nature  as to equip the medical staff to meet the constitutional requirements of providing adequate medical to those placed in the custody of the government.

**ARGUMENT**

**A. Standard for Determining Motion for Summary Judgment.**

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56 (c).* The party moving for summary judgment has the burden of showing conclusively that no genuine issue of material fact exists. The evidence presented is construed in the light most favorable to the non-moving party, which is given the benefit of all favorable inferences that can be drawn there from. ***United States v. Diebold,***

*Inc., 369 U.S. 654, 655, 82 S. Ct. 993 (1962); Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995)* (in resolving a motion for summary judgment, the court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the non-moving party"); **Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555, 560 (6th Cir. 2004)**. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" **Spadafore v. Gardner, 330 F.3d 849, 852 (6th Cir. 2003).** Defendants cannot meet this burden and this case must be submitted to a jury.

> Deliberate indifference occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838. Thus, the deliberate indifference standard contains both an objective and a subjective component. *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004). The objective component addresses whether the deprivation was "sufficiently serious," *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992), and the subjective component addresses whether the officials acted with "a sufficiently culpable state of mind." *Id.* To establish the subjective component, however, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

*Padula v. Trumbull County, etal., 4:10-CV-2876, @12.*

Defense Counsel in its motion and brief would have this Court adopt a standard of liability which places a greater burden on the deceased Plaintiff than what is the law in the area of 42 USC 1983 litigation. However, The Sixth Circuit has provided more specific guidance in applying this Eighth Amendment standard of "deliberate indifference" to cases of claimed medical mistreatment. In particular, "deliberate indifference may be established by a showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Regional Psychiatric Hospital, 286 F.3d 834, 843 (6th Cir. 2002) (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).* This standard of "grossly inadequate care," in turn, has been described as "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the

3

conscience or to be intolerable to fundamental fairness.'*" Terrance at 844 (quoting
Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)).* To ascertain whether a medical
care provider rendered grossly inadequate medical care to a detainee, a court must undertake
a "**particularized, fact-specific inquiry**."[emphasis added] *Id. Terrence,* and numerous
other cases do not support defendants' argument that when "efforts [are] undertaken," to
give medical care deliberate indifference will not be found…. Rather, it is clear that some
care may still support a finding of deliberate indifference, especially where the level of care
for all practical purposes equates to care so "grossly inadequate" in the specific
circumstances of the case that it amounts to a clear violation of the inmates guaranteed right
to adequate medical treatment.

In *Padula v. Trumbull County, etal., 4:10-CV-2876*, this District Court stated that the
conduct of the actor need not be flagrant to constitute deliberate indifference:

> The federal courts have also held that less flagrant conduct may also constitute
> deliberate indifference in medical mistreatment cases. For example, the
> Eleventh Circuit has held that "deliberate indifference may be established by a
> showing of grossly inadequate care as well as a decision to take an easier but less
> efficacious course of treatment." McElligott v. Foley, 182 F.3d 1248, 1255 (11th
> Cir. 1999) (a doctor's awareness that plaintiff's condition was deteriorating and
> subsequent failure to treat plaintiff could support a finding of deliberate
> indifference); see Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (a
> doctor's decisions to remove patient from medication and to restore the
> medication without Lithium constitutes deliberate indifference to patient's
> psychiatric condition). Moreover, "[w]hen the need for treatment is obvious,
> medical care which is so cursory as to amount to no treatment at all may amount
> to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (a
> physician's assistant's failure to inform his superior or a medical doctor of a
> prisoner's known injured leg constitutes deliberate indifference); Cooper v. Dyke,
> 814 F.2d 941, 945-46 (4th Cir. 1987) (a prison employee's two-hour delay in
> providing medical care to an inmate known to have gunshot wounds constitutes
> deliberate indifference).

**Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002**).

It is well established in the Sixth Circuit that Opiate withdrawal constitutes a serious
medical need. In *French v. Daviess, 376 Fed. Appx. 519* the Sixth Circuit stated:

> Courts have found withdrawal symptoms to qualify as a serious medical
> need. *See, e.g., Mayo v. County of Albany,* 357 Fed.Appx. 339, 341-42 (2d

Cir.2009) (heroin and alcohol withdrawal); *Sylvester v. City of Newark,* 120 Fed.Appx. 419, 423 (3d Cir.2005) (acute drug withdrawal); *Foelker v. Outagamie County,* 394 F.3d 510, 513 (7th Cir.2005) (methadone withdrawal)

### A. Genuine issue of material fact as to whether the conduct of Medical Assistant Hake in  regard to inmate Wright posed substantial risk of serious harm and precluded grant of summary judgment as to Defendant Rachel Hake

Rachel Hake is a medical assistant working for Dr. Philip Malvasi, DO since May of 2016, her first work assignment as a medical assistant post graduating from ETI with a diploma in Medical Assistant as opposed to an associate degree which was also offered at ETI. *Hake Depo. 14/17-25.* She considers an inmate's withdrawal from drugs to be a "serious medical condition" possibly life-threatening, calling for her immediate action*. ECF 73, Hake Depo. 74/14-17,* and, in failing to take Wright's vitals and her failure to call Dr. Malvasi after her obvious observance of Wright distressed medical condition on multiple occasions, she instead, according to the shift report, directed Corrections staff "to just watch him for now" disregarding his serious medical condition and making a judgment outside of her scope of duty, knowledge and certification as an unlicensed medical assistant that Wright was experiencing "standard opiate withdrawal" not requiring a supervisory contact. *. ECF 73,  Hake Depo. 171/20-25.*

The facts clearly demonstrate that Mr. Wright suffered opiate withdrawal symptoms, and exhibited signs of severely deteriorating medical condition during the period of time he was a prisoner in the Trumbull County Jail.  The obviousness of a substantial risk to the health of Wright was so obvious as to constitute knowledge under the standard set-forth in the US Supreme Court decision in *Farmer, Id*. or at least to be construed as constructive knowledge which presents an issue of material fact in dispute denying summary judgment.

In the deposition of MA Hake she testified of her conversation with Defendant Lobdell in regard to the fact that Wright was withdrawing from drugs which evidenced that there was a subjective recognition of the existence of a substantial risk from Mr. Wright's

5

severe medical condition and yet both Hake and Lobdell in disregarding that risk failed to take adequate medical action or to contact Dr. Malvasi informing him of Wright's obvious deteriorating medical condition. *. ECF 73, Hake Depo, 85: 1-13*

Despite the Defendants attempt to portray the care given Wright at the Trumbull jail by the medical Staff as adequate the facts indicate otherwise.  It is undisputed that Defendant Hake was aware of the fact of Wright's drug addiction, withdrawal and Xarelto medication but left from her first encounter with him not having taken what she acknowledges as necessary vital signs. *. ECF 73, Hake Depo. 112/4 -113/20*, also see *Appendices Table 1.*

*Table 1* clearly documents that over a period of 4 hours Hake responded to the concerned call of correction officers in regard to what they perceived as the serious medical condition of Wright on at least three (3) recorded occasions yet she disregarded the known and obvious risks and failed to take necessary vitals and presumptively diagnosing Wright's condition as "common opiate withdrawal"

According to the General Assessment Form of Rachel Hake, Wright complained of coming off heroine and tells Hake "I'm sick".  Hake notes that Wright is disheveled and clammy yet fails to contact her alleged off-site supervisor LPN Ahart or the off-site physician Dr. Malvasi despite the fact of Wrights clear medical distress and the fact that Wright advised her of withdrawing from heroin, a serious medical condition. *. ECF 73, Hake depo. 119:7-9*

Despite her failure to exercise proper protocol and obtain the necessary vitals Hake initiates a treatment plan of ibuprofen, imodium and Maalox, obviously ignorant of the fact that ibuprofen and Xarelto should not be taken together creating an increased opportunity of internal bleeding. *Pltf. Brief Opp., Exh.A, Medical Report of Dr. Tyler @ 15*

### B.  Genuine issue of material fact as to whether the conduct of Medical Assistant Lobdell in  regard to inmate Wright posed substantial risk of serious harm and precluded grant of summary judgment as to Defendant Bethany Lobdell

Lobdell, through her own cynical and indifferent testimony, creates a genuine issue of fact precluding summary judgment  where she states in her deposition:

Page 71

16.          Q      So you felt there was a possibility he was

17.     going through withdrawal?

6

18.          A          He very well could have gone through

19.      withdrawal, or he could have had an upset stomach from

20.      something that he ate, or it could have been anything

21.      that was going on.  You don't see an upset stomach and

Page 72

1.      automatically think withdrawal.

*ECF 74, Lobdell Deposition, 71:16-72:1*

This testimony reeking of sarcasm reveals the fact that Lobdell subjectively recognized that there was a risk of Wright suffering serious harm yet was deliberately indifferent to the serious medical condition of Wright even despite his having advised Lobdell of his withdrawal while she was treating his leg wound.  Lobdell even with the LPN in close proximity chose not to speak with the LPN who was on site at the time or contact the physician who was allegedly available 24/7. *ECF 74, Lobdell Depo, 44:1-13*.

      In addition, despite the Clinical Opiate Withdrawal Sheet/"COWS" being available to her for assessment of the severity of Wright's withdrawal she deliberately ignored the assessment tool, failed to take the necessary vitals, choosing to "punt" on any assessment of Wright's medical condition and deliberately failed to annotate the occurrence for the benefit of any subsequent medical staff failing to notify Dr. Malvasi or LPN Ahart*. ECF 74, Lobdell Depo.*, *41:4-14*; *66:15-68:9.*

      On multiple occasions Lobdell failed to annotate the complaints of Wright, her subjective assessments of Wright's medical condition or check Wright's medical chart prior to treatment. *ECF 74, Lobdell Depo, 40:2-13; 58:13-14;81:15-82:1.*

**C.  Was the need for more or different training and supervision so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the Defendant Malvasi can reasonably be said to have been deliberately indifferent to the need of the inmate Wright and others to whom the Defendant had a constitutional obligation**

      In order to establish a claim for failure to train or supervise the Plaintiff must establish that the Defendant "acted with deliberate indifference to the risk of the constitutional violation." **Amerson v. Waterford Township, 562 Fed.Appx. 484 (6th Cir. 2014).** *Section 5120.10 of the Revised Code promulgated* of the **Standards for Jails in Ohio** states in *5120:1-7-*

7

*02 item (17)* the fundamental rights "guaranteed to all inmates" as the following:

> "Fundamental rights": Rights which may not be suspended for disciplinary or classification reasons and which are to be guaranteed to all inmates except in times of emergency or other such conditions beyond the control of the facility administrators. Such rights may include visits by attorneys or clergy, telephone calls to attorneys or clergy, adequate food/nutrition, adequate lighting, adequate ventilation, temperature control, sanitation**, medical care** and access to a grievance mechanism. (emphasis added)

The U.S. Supreme Court in *City of Canton,* clearly states the Standard adopted by the Sixth Circuit when it stated:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees **the need for more or different training is *so obvious*, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need**. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. [emphasis added]

**Canton, 489 U.S. at 390, 109 S.Ct. 1197**

The Sixth Circuit in *Shadrick v. Hopkins Cty, Ky., 805 F3d 724 (2015)* states as follows in regard to the applicable standard of proof in a "failure to train" claim:

> The "deliberate indifference" standard of the Eighth Amendment governs SHP's responsibility for training and supervising its LPN nurses concerning their legal duty to honor an inmate's constitutional right to adequate medical care. SHP's failure to train and supervise its LPN nurses adequately "about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983," *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011), and constitute the moving force behind Butler's harm. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir.2013) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Shadrick's burden under § 1983 is to prove that SHP's failure to train and supervise its LPN nurses about the legal duty to provide constitutionally adequate medical care amounted "to deliberate indifference to the rights of persons with whom the [nurses] come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109

S.Ct. 1197, 103 L.Ed.2d 412 (1989). The law does not permit Shadrick to hold SHP liable under § 1983 on theories of vicarious liability or respondeat superior. *See Rouster,* 749 F.3d at 453.

Shadrick v. Hopkins Cty., Ky., 805 F.3d 724, 737 (6th Cir. 2015)

In Shadrick,  a case on point and strikingly similar to the present case, the mother of a deceased inmate brought 42 USC 1983 claims for failure to train  against a private medical provider contracted to provide medical services to inmates. The Sixth Circuit reversed and remanded the District Court's grant of summary judgment finding that:

> …Shadrick can establish "a single violation of federal rights, accompanied by a showing that [SHP] has failed to train its employees to handle recurring situations presenting an obvious potential" for a constitutional violation. *Bryan Cnty.,* 520 U.S. at 409, 117 S.Ct. 1382. This second mode of proof is available "in a narrow range of circumstances" where a federal rights violation "may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." *Id.*

The Court's rationale in its decision in ***Shadrick v. Hopkins Cty, Ky., 805 F3d 724 (2015)*** in reversing the District Courts grant of summary judgment is both on-point and controlling in the case presently before this Court where, just as in Shadrick,, the medical staff failed to take the necessary vitals, failed to record necessary documentation and failed to contact any competent licensed medical professional all of which are required under the Standards for Jails in Ohio.  The **Ohio Administrative Code**, 4731-23 states in item (C) as follows:

> **(C) "On-site supervision" means that the physical presence of the physician is required in the same location (e.g., the physician's office suite) as the unlicensed person to whom the medical task has been delegated while the medical task is being performed. "On-site supervision" does not require the physician's presence in the same room. (emphasis added)**

> ***Section 4731-23-02 of the Ohio Administrative Code*** reads in relevant part

regarding the delegation of duties that only upon the following conditions should tasks be delegated to unlicensed person:

(B) Prior to a physician's delegation of the performance of a medical task, that physician shall determine each of the following:
  \*\*\*\*\*\*\*\*

9

**(6)(a)** **That the task can be performed without requiring the exercise of judgment based on medical knowledge;**

**(6)(e)** **That the task can be performed without repeated medical assessments and,**

**(6)(f)** **That the task, if performed improperly, would not present life threatening consequences or the danger of immediate and serious harm to the patient**.

It has already been established in the Sixth Circuit that medical assistants are unlicensed practitioners in reference to the Ohio Code[1] Despite this fact, Dr. Malvasi has chosen to consciously ignore these limitations for his own financial benefit. In 4731-23-01 the statute states that on-site-supervision is required when medical tasks are being performed yet when Wright was evidencing signs of a serious medical condition neither Malvasi nor the LPN Ahart were in the building available to supervise or make the decisions "requiring the exercise of judgment based on competent qualified medical knowledge" that *OAC 4731-23-02(6)(a)* requires for physician's delegation of duties. Furthermore, Malvasi's failure to train or supervise directly resulted in his violation of *OAC 4731-23-02(6)(e*) and (f) in that repeated assessments of Wright medical condition had taken place and that wrongful delegation of duties resulted in the "threatening consequences or the danger of immediate and serious harm to the patient". *Appedendices, Table 3, Malvasi Depo references.* However, when questioned regarding the duties and limitations of a licensed practical nurse and a medical assistant Dr. Malvasi was uncertain as to the limitations of the unlicensed personnel working for him. *ECF 72, Malvasi Depo @ 31:19-32:8*

Dr. Malvasi has failed in meeting any of these criteria. From the initial observance

of the medical condition of Wright on the 3rd of May, 2017 up to and including the time of his avoidable death on the 5th day of May, 2017, Wright was not referred to sick call for his obvious and serious medical condition or seen by Dr. Malvasi despite the medical Staff's knowledge of Wright withdrawing from opiate dependence and additional medical conditions.

---

[1] See Border v. Trumbull County Board of Commissioners, 2011 WL 917253 (Whitlock was not a nurse or trained emergency medical technician ("EMT"), but rather an unlicensed medical assistant.)

Medical Staff including both Defendants Hake and Lobdell were aware of the medical condition of Wright yet failed to contact Dr. Malvasi despite the obvious and apparent need to do.

However, the most significant and damning proof of the existence of genuine issues of material facts comes from the deposition testimony of the medical staff LPN and alleged trainer:

Page 25

| 12. | Q | Did you have formal training for the Staff, |
|---|---|---|
| 13. | | formal training being predetermined topics and |
| 14. | | written materials? |
| 15. | A | For training? |
| 16. | Q | For training? |
| 17. | A | No. |

**ECF 70, Carla Ahart Depo, 25:12-17**

The deposition testimony of Lobdell is equally damaging to the position of the Defendants. Despite the fact that at the time of her hire at TCJ as a medical assistant in April 2015 Lobdell had no prior experience as a medical assistant **ECF 74, Lobdell Depo., 9:15-19; 13:7-10, and** no previous training in the treatment of withdrawals **ECF 74, Lobdell Depo., 26:19-27:7.**

It is established in Section 1983 litigation that in order to establish liability as a result of custom or policy "[a] plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [municipal actor] itself and show that the particular injury was incurred because of the execution of that policy.' " **Graham ex rel. Estate of Graham v. Cnty. of Washtenaw, 358 F.3d 377, 383 (6th Cir.2004)** (quoting **Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir.1993))**.". This is applicable where the actor is a private contractor such as Dr. Malvasi who delegates tasks to unlicensed personnel beyond the scope of their authority as evidenced by their illegal diagnosis of Wright medical condition and judgment decisions exceeding their

11

scope of practice their disregard and failure to contact the physician resulting in multiple medical complications which were not adequately treated. *See Exhibit 4, Pltf. Brief Opp., Exhibit A, Tyler Medical Report.*

Dr. Malvasi acknowledges that the Standards for Jails in Ohio govern his practice as Medical Director at TCJ, *ECF 72, Malvasi Depo. @ 87:5-14*, and was aware of the annual State inspections, and yet fails to participate in those inspections choosing to leave that responsibility to his unlicensed and untrained medical assistants. *ECF 72, Malvasi Depo. @ 88:5-7*, and although Malvasi acknowledges that the medical department undergoes inspections he admits that he makes no efforts to obtain to participate in the actual inspection, that he had no problem with the results not being reported to him and not taking any corrective action on any of the noted deficiencies relating to the Medical Department. *ECF 72, Malvasi Depo. @ 89:11-20.*

Despite the existence of actual standards promulgated by the State of Ohio, through the ODRC, Malvasi has consciously disregarded the obvious and known risks inevitably associated with his lack of training and supervision. Such evidence creates a genuine issue of material fact precluding summary judgment on behalf of Malvasi. *See* **Martin v. City of Broadview Heights, No. 1:08 CV 2165, 2011 WL 3648103, at \*9–10 (N.D. Ohio Aug. 18, 2011), amended, No. 1:08 CV 2165, 2011 WL 5361062 (N.D. Ohio Oct. 31, 2011), and aff'd, 712 F.3d 951 (6th Cir. 2013)** (finding an issue of fact concerning "deliberate indifference" in a positional asphyxia case where "the City knew, as evidenced by the promulgation of its Policies, that its police officers would use force to restrain and arrest citizens, yet failed to follow accepted professional standards in training its officers of how to properly apply such force) However, Dr. Malvasi clearly has not trained his staff to exercise sound and/or adequate medical judgment in regards to assessing the serious medical condition of inmates needing medical*.* It is equally clear from the testimony of Dr. Malvasi, that his own deliberate indifference to the medical conditions of those placed in his charge, including but not limited to Wright, allowed him to recklessly "trust" in the non-existent training and "educational experience" of both Rachel Hake and Bethany Lobdell.

Dr. Malvasi's policy and or custom of failing to train or supervise his employees constitutes an independent cause of action of deliberate indifference which resulted in the

injuries to the plaintiff Wright. The law under sec. 1983 is clear that in a Monell claim of municipal liability for failure to train a municipality can be held liable even where it's employees are not. See ***Fagan v. City of Vineland, 22 F3d. 1283(3d Cir. 1994***) (municipality is directly liable if the injuries result from the application of the custom/policy); ( ***Thomas vs. Cook County Sheriffs Department, 604 F. 3d 293, 305 (7th Cir. 2010)*** (a municipality can be held liable under Monel, even when its officers are not). The Sixth Circuit has followed this legal reasoning in ***Winkler v. Madison County, Ky, 893 F.3d 877, 900 (2018)*** citing ., ***Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002)*** ("If a plaintiff establishes he suffered a constitutional injury *by the City*, the fact that individual officers are exonerated is immaterial to [municipal] liability under § 1983." and ***Gray v. City of Detroit, 399 F.3d 612,617(2005)*** (It is arguable, therefore, that the District Court erred in its conclusion that "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."

Dr. Malvasi's misplaced reliance upon the "educational experience" of the medical assistants as opposed to training them to the atmosphere and situations which constantly arise in facilities whose very purpose is to house and take responsibility for those entrusted to their care.  Like any other policy, a failure to train can be so obvious, and "so likely to result in [a] violation of constitutional rights," that an official can be said to be deliberately indifferent. **City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989)**. The Canton court clearly indicated that where the likelihood of recurring occurrences requiring the actions of an adequately trained staff are required the Plaintiff need not establish a pattern theory to establish deliberate indifference and although the Dr. Malvasi has a long and storied history with this Court in regard to these type of Claims[2] Dr. Malvasi failure to train or provide adequate supervision directly resulted in his not being contacted to diagnose the serious medical condition of Wright.. Dr. Malvasi did not receive any reports as Mr. Wright's condition worsened over a period of days. His failure to set up a system for securing accurate information about his patients is further evidence of his deliberate indifference to the serious medical needs of the inmates.

The testimony of medical staff is damning in that it clearly indicates the lack of

---

[2] Over the past years Border, Padula, Edwards,

adequate training, Malvasi did no training and what training was given, primarily administrative, related to day to day operations. Furthermore, both Hake's and Lobdell's own testimony reveals that training, if not non-existent, was so inadequate as to be "cursory" at best. *See Table 3, Hake and Lobdell references to training.*

Dr. Malvasi clearly delegated the care of Wright to his untrained/undertrained medical assistants where he admits that he never rendered any treatment to Wright, never attempted to see Wright in sick-call, and never made any diagnosis of his obvious medical distress. *ECF 72, Malvasi Depo.9:14-25*

Dr. Malvasi's failure to train his Medical Assistants was a proximate cause of Wright's worsening medical condition and subsequent death and preclude summary judgment for Dr. Malvasi.

**Expert Report of Dr. Tyler, M.D. in Support of Lack of Training and Supervision**

The report of Dr. Melanie Tyler further supports the facts indicating the deliberate indifference of the medical assistants and a lack of adequate, if any, training given to the medical staff at the Trumbull County Jail. In her report Dr. Melanie Tyler addresses issues directly relevant to the matter presently before this court. One of these question three is addressing her report is "What would be the foreseeable results of Mr. Wright's untreated symptoms of opiate withdrawal /or other serious medical condition" Dr. Tyler's states her opinion, with reasonable medical certainty, that " the foreseeable results from the inadequate treatment of the medical condition of Mr. Wright would be a progressive deterioration of his medical condition…" and that he was placed at serious risk by being "left unattended or inadequately treated". Medical Report of Dr. Melanie Tyler page 10

Another question addressed by Dr. Tyler in her report is "Was the treatment provided to Mr. Wright by the medical assistants Hake and Lobdell at the jail adequate and consistent with the standard of care expected for the treatment of individuals in medical distress" to which she stated, with a reasonable medical certainty, "the care and treatment given to Mr. Wright was grossly inadequate and below the standard of care." and cites the lack of on-site supervision of a supervising medical person pursuant to OAC for C7 31–20 3–0 3C as one of the contributing factors. In addition, Dr. Tyler goes further to state:

One of the glaring issues in this matter is the problem of the Jailed administration and Dr. Malvasi ignoring the limitations and restrictions in regard to the duties of a medical assistant in

14

the state of Ohio and adopting a policy of allowing medical assistance to assume duties precluded by law. Although a medical assistant has graduated from an accredited medical assistant program the state of Ohio grants no legal status to a medical assistant outside of the limitations and restrictions of Ohio revised code chapter 4731 et. seq..." referring to this practice as "a policy of deference to the medical assistants in regard to the medical treatment of the inmates." Tyler Report @ 14.

Furthermore in regards to their supervision and training Dr. Tyler states after reviewing the relevant documentation :

> [T]he medical assistants do not appear to have been adequately supervised or trained as they did not report the signs and symptoms to their supervisor or request that Mr. Wright be transferred to the ER as his condition as observed would have indicated. They did not recognize that a heart rate of 168 represented the possibility of a severe and possibly life-threatening abnormal heart rhythm that could degenerate into a life-threatening heart rhythm…and if Mr. Wright was not fully cooperative given his age and previous substance-abuse and the possibility that his of lack of cooperation could have been a factor from his medical condition it would have been objectively reasonable for a trained and competent medical assistant to be concerned about the medical possibility of some underlying complications and contact the supervising nurse or physician to inform them of the situation."

Tyler Report @ 14.

> In addition, they do not contact their supervisors for guidance to confirm the diagnosis and to tailor any treatment to the specific medical needs of the patient (e.g.. not giving ibuprofen since it is contraindicated in a patient on Xarelto). They also exhibit deliberate indifference by not contacting their supervisor, and by not documenting any treatment they say they provided."

Tyler Report @ 15-16.

The medical report of Dr. Baster, although lengthy, is unconvincing.  The report spends quite a bit of time and paper detailing the plaintiffs pre-existing conditions, previous hospitalizations and treatments and addictions.  Dr. Baster would have this Court adopt a standard that places the burden of determining  what actions the medical staff should take to constitute adequate medical care upon the Plaintiff who lacks the medical background, training or expertise.

The United States Constitution guarantees to each inmate medical care and any deprivation of that guarantee based upon pre-existing conditions, or a distain by medical

15

staff of the problems of incarcerated individuals, does not negate that constitutional guarantee.

The historical narrative by Dr. Baster only evidences the pre-existing problems of Wright (a matter that is not in dispute) however it is clear law that adequate medical treatment is not limited or precluded by pre-existing problems or what medical personnel may perceive as "bad attitudes". Dr. Malvasi and his employees had both a statutory as well as a contractual obligation to treat each and every inmate who has a medical condition with adequate medical care. The language of the report the evidence set forth in the report clearly evidences the apathetic and indifferent attitude of the medical personnel towards inmates afflicted with addictions and serious pre-existing problems which would necessitate adequate medical care, care that Dr. Malvasi was obligated to provide yet failed to train supervise or provide to Lewis Wright or to be sufficient to treat expected, common and reoccurring serious medical conditions recognized by Malvasi to be prevalent in jail situations.

It is very problematic that the Defendants attempt to escape liability, absent any reciting of legal support, based upon the medical report of Dr. Baster asserting that the death of Wright "was due to an unknown, undiagnosed, and undiagnosed heart condition." [3] Deft. Brief @ 8, ignoring the fact that the defendants subjectively observed and recognized the serious medical condition of Wright and have chosen to rest upon the assertion that because Wright did not die from what was expected they should not be liable.

Dr Tyler concludes that as a result of the deliberate indifference of defendant medical assistant and the lack of significant training Wright suffered a "psychologically and physically debilitating experience " and that "Medical Assistants by law and training are not competent to perform the medical assessments and tasks that were required to possibly preserve the life of Mr. Wright. Tyler Report @ 15.

## CONCLUSION

Plaintiff's claims of deliberate indifference goes to the fact that even upon witnessing the serious medical condition of the deceased they chose to ignore the risk of

---

[3] An assertion refuted by Dr. Tyler, See attached expert Affidavit and report of Dr. Melanie Tyler, Exh. A

serious injury and made unauthorized diagnoses despite their being untrained/undertrained non-licensed medical assistants who failed to secure competent medical advice or emergency facility care which could have saved the life of Gregory Wright regardless of what was the cause of his death.

These issues create material facts in dispute which warrant the denial of the Defendant's motion and therefore the motion for summary judgment should be denied.

Respectfully submitted,
/s/Gilbert W.R. Rucker, III

Gilbert W.R. Rucker, III (0034535)
1569 Woodland St., Suite 10
Warren, Ohio 44483
330/647-0855 ofc
440/824-2868 fax

/s/Robert Smith, III
Robert Smith, III(0025381)
Law Offices of Robert Smith, III
3751 Prospect Ave., East 3rd Floor
Cleveland, Ohio 44115
216/658-6780 ofc.
216/658-8971 fax
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2018, a copy of the foregoing Objection to Summary Judgment was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Attorney for Plaintiff

17

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Plaintiff's by and through Counsel that this matter has been assigned to the standard track of the Court and adheres to the page limitations as set forth in the referenced Local Rule 7.1.

Respectfully submitted,
/s/Gilbert W.R. Rucker, III

Gilbert W.R. Rucker, III (0034535)

# APPENDICES

| | |
|---|---|
| Exhibit A | Expert Report of Dr. Melanie Tyler |
| Table 1 | Trumbull County Internal Affairs Investigation Summary |
| Table 2 | Trumbull County Internal Affairs Findings |
| Table 3 | Trumbull County Training and Supervision Deficiencies |
| 5120:1-7-02 | Minimum Standards for Jails in Ohio Glossary of Terms |