IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF GREGORY WRIGHT, et al.** | ) ) | **CASE NO. 4:17-cv-02383-BYP** |
| | ) | **JUDGE BENITA Y. PEARSON** |
| **Plaintiffs** | ) ) | |
| v. | ) ) | |
| **TRUMBULL COUNTY BOARD OF COMMISSIONERS, et al.** | ) ) ) | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **Defendants** | ) ) ) | **(Oral Argument requested pursuant to L.R. 7.2(b))** |

Defendants Phillip Malvasi, D.O., Bethany Lobdell, RMA, NRCPT, and Rachel Hake, NRCMA, NRCEKG, RPT, by and through the undersigned counsel hereby submit this Reply Brief in Support of their Motion for Summary Judgment in order to address the unsupported factual and legal arguments in Plaintiff's Objection to Defendants' Motion. Plaintiffs' Objection fails to establish a genuine issue of material fact pertaining to the alleged deliberate indifference of Defendants to Gregory Wright's medical needs or concerning a causal connection between any such actions and Wright's alleged injuries.[1] Accordingly, summary judgment should be entered in favor of Defendants.

---

[1] Plaintiffs style their Objection as "Plaintiff's" Objection. However, the Amended Complaint identifies the Estate of Gregory Wright and also Barbara Wright, the widow of Mr. Wright, as separate Plaintiffs. (Am. Compl., ECF Doc. No. 30.) Despite this separate identification, Defendants presume that Mrs. Wright is intended to be included within the Amended Complaint only in her role as Administrator of the Estate of Gregory Wright, since Plaintiff in amending the Complaint on May 15, 2018 (Am. Compl., ECF Doc. No. 30) removed original Count XII, the loss of consortium claim, which claim nonetheless would

Critical to any summary judgment decision in this matter is an understanding of an accurate time line of the relevant events, as well as the complete medical testimony and evidence.[2] This time line and supporting evidence do not comport with the picture Plaintiffs attempt to portray in their Objection and do not present any genuine issues of material fact precluding summary judgment. As outlined in the Motion for Summary Judgment, Registered Medical Assistant Lobdell and Nationally Registered Certified Medical Assistant Hake's medical interactions with Mr. Wright occurred only during their respective 8-hour shifts on May 4-5, 2017, wherein they provided Wright with a bandage ("dressing") change for a leg wound, medication to address his stomach-related symptoms, and medical attention related to his potential drug withdrawal symptoms. Dr. Malvasi's involvement with Wright included ordering Wright's prescription medication related to his preexisting blood clot issues. Dr. Malvasi and his supervising L.P.N. also trained and supervised all Jail Medical staff, including RMA Lobdell and NRCMA Hake, and provided them with appropriate and extensive written medical policies, procedures, and protocols, which were followed in this instance by Lobdell and Hake. These prudent medical actions do not constitute deliberate indifference to Wright's medical needs in violation of 42 U.S.C. § 1983.

The time line pertinent to the medical assessments and condition of Wright on **May 3, 2017** is as follows:

---

not be a viable claim in this case. *Cairns v. Malvasi*, 2019 U.S. Dist. LEXIS 7831, *17-18 (N.D. Ohio Jan. 16, 2019).

[2] It is important to note that Plaintiffs' proffered expert, Dr. Tyler (whose unauthenticated report is attached to Plaintiff's Objection, ECF Doc. No. 80-1), failed to review any of the testimony in this case and only reviewed a portion of Defendants' documents (which did not include the complete personnel records of RMA Lobdell and NRCMA Hake, as those were provided with Supplemental discovery responses). (Doc. No. 80-1, at 1037-1039).

- **9:43 a.m.:** Wright reported to the Trumbull County Jail.[3]

- **10:24 a.m.:** Wright went through the normal jail intake process, which included responding to officers' medical and other usual intake questioning. He was noted to be behaving normally and was without signs or symptoms of any alcohol or drug influence or withdrawal. Officer Machingo also recorded that Wright denied taking any non-prescription drugs and had no injuries or conditions that required the jail medical staff's immediate attention.[4]

- **11:00 a.m.** (approximately)**:** Supervising medical nurse Carla Ahart, L.P.N. performed a routine medical booking assessment of Wright.[5] Pursuant to Jail and Medical policies, she took, recorded, and reported the one medication (Xarelto) that Wright carried into the jail. Dr. Malvasi promptly approved Wright's 20 mg. Xarelto prescription. Nurse Ahart also recorded Wright's need for a bandage ("dressing") change for a leg wound, his blood clot condition for which he took Xarelto, and his new admission that he had used heroin that morning. Consistent with Officer Machingo's intake observations, Nurse Ahart further observed that Wright was stable, was in no distress of any kind, and did not require formal medical observation or additional correctional officer rounds at that time.[6] Pursuant to medical department procedures, Nurse Ahart also relayed Wright's medical information and condition to the medical staff, along with the medical chart documentation she completed.[7]

- **Meal times, headcount, hourly watch tours for the remainder of the day/evening:** Officers observed no issues with Wright at any time post-booking on May 3, 2017.[8]

The time line pertinent to the medical assessments and condition of Wright on **May 4, 2017** is as follows:

---

[3] *See* the deposition testimony of Barbara Wright, at pp. 29-30, ECF Doc. No. 68; Exhibit E, at Trumbull 000048, ECF No. 69. Mr. Wright was scheduled to be transferred to the Lorain Correctional Institution on the May 5, 2017.

[4] Exhibit A; Exhibit E, at Trumbull 000048, ECF No. 69.

[5] Nurse Ahart was on duty on May 3, 2017 from 5:44 a.m. to 2:17 p.m.

[6] Officers perform hourly rounds relative to all inmates. Additional rounds, if ordered, would be performed every ten minutes.

[7] Exhibit E, at Trumbull 000048, ECF No. 69; Exhibit B; deposition testimony of Carla Ahart, L.P.N., at pp. 53-54, ECF Doc. No. 70; deposition testimony of Dr. Malvasi, at p. 18, ECF Doc. No. 72; Exhibit C; Exhibit A. Wright had an existing medical chart from his prior stay at the jail. *See, e.g.*, Exhibit B, which references Wright's August 2016 incarceration.

[8] Exhibit E, at Trumbull 000048, 000063, 000091.

- **8:00 a.m.:** Jessie Clay, RMA, NRCEKG (Registered Medical Assistant, Nationally Registered Certified EKG Technician), provided Wright with his Xarelto prescription at medication pass, without incident or any medical issues noted.[9]

- **4:00 p.m.** (approximately)**:** Officer Zadroski brought Wright to the Medical Department in order to have his leg wound cleaned, medicated, and re-dressed. Upon arrival, Bethany Lobdell, RMA, NRCPT (Registered Medical Assistant, Nationally Registered Certified Phlebotomy Technician), cleaned and placed a new dressing on Wright's wound. However, Wright refused to allow Lobdell to apply medication to the wound.[10] While attending to his leg, Lobdell also inquired about Wright's withdrawal from any drugs after Wright mentioned that he was nauseated and had been vomiting. Wright stated that he was "coming off of heroin." Accordingly, and pursuant to medical policies, procedures, and protocols, Lobdell offered three over-the-counter medications to Wright to be provided at that evening's medication pass, in order to address the stomach symptoms about which Wright complained. Wright agreed to take those offered medications, and presented no other complaints or medical issues of concern to RMA Lobdell at that time.[11]

- **Meal time, headcount:** Officers observed no issues with Wright post-medical visit.[12]

- **8:11 p.m.:** RMA Lobdell provided Wright with the over-the-counter medications they previously discussed, in order to address Wright's stomach complaints and pursuant to the Medical protocols approved by Dr. Malvasi for OTC medications and for withdrawal symptom management. Wright reported for medication pass and took these medications without incident or need for assistance.[13]

---

[9] Exhibit E, at Trumbull 000048; Exhibit D, ECF No. 73. Clay was on duty on May 4, 2017 from 6:03 a.m. to 1:54 p.m. (day shift).

[10] Supervising medical nurse Carla Ahart, L.P.N. was in the Medical Department during this medical interaction with Wright and observed Wright's resistance to medical treatment for his leg. She noted that Wright was in no distress of any kind and was not in need of emergency treatment. Exhibit C, at pp. 6-7. Nurse Ahart was on duty on May 4, 2017 from 9:15 a.m. to 4:47 p.m. Nurse Ahart further testified that she is on call and supervises the Medical staff at the Jail on a 24-hour basis, as does Dr. Malvasi. Deposition testimony of Ahart, at pp. 22, 95-96, ECF Doc. No. 70. Dr. Malvasi was also present and attending to inmate's medical needs at Sick Call on May 4, 2017 during the day shift. (Exhibit H, which was marked as Exhibit 2 at the deposition of Nurse Ahart, ECF Doc. No. 70 at pp. 55-56.)

[11] Exhibit E, at Trumbull 000048-49, 000063, 000091, 000128, 000137, 000139; deposition testimony of RMA Lobdell, ECF Doc. No. 74 (see the pertinent deposition pages attached as part of Exhibit I); deposition of Nurse Ahart, ECF Doc. No. 70 at pp. 43-44, 59-61; Exhibit J, which was produced during discovery by Dr. Malvasi.

[12] *Id.*

[13] *Id.*

4

- **Evening hourly watch tours:** Officers reported nothing unusual relative to Wright after medication pass and during the remainder of Lobdell's shift, which concluded at 10:20 p.m.[14]

The time line pertinent to the medical assessments and condition of Wright on **May 5, 2017** is as follows:

- **12:05 a.m.:** Officers summoned Rachel Hake, NRCMA, NRCEKG, RPT (Nationally Registered Certified Medical Assistant; Nationally Registered Certified EKG Technician; Registered Phlebotomy Technician) to attend to Wright, who had vomited and was complaining of some numbness in his fingers. Hake arrived to assess Wright, who reported that his stomach hurt, that he was feeling sick, and that he was coming off of heroin. Hake noted that Wright was alert and oriented to person, place, and time, was "clammy" and "disheveled," and attempted to obtain his vitals. However, Wright refused to cooperate with Hake to allow her to complete those vitals. Given his lack of cooperation, Hake advised officers to continue to monitor him, to advise if his condition changed, and ensured that Wright would again receive the three medications initiated by Lobdell the evening before at the next medication pass, in order to address Wright's continued symptoms.[15]

- **4:30 a.m.:** Officers called for Hake to see Wright again as his symptoms had worsened. However, Wright once again refused to cooperate so that Hake could complete a full vitals assessment and told her he did not want any offered medication for his stomach. Hake nonetheless placed notes in Wright's chart for him to receive the withdrawal protocol medications he had been started on again at the 8:00 a.m. medication pass and told officers to continue to monitor him for any changes in his condition. Officers thereafter complied with Hake's request and interacted with Wright on multiple occasions that morning, with no noted further concerning medical issues of any kind during her shift, which concluded at 6:08 a.m.[16]

- **5:00 a.m.:** Officer Whitaker observed Wright and asked him how he was doing. He responded, indicating that he was feeling better." Whitaker noted that Wright was sitting up and seemed more awake and alert.[17]

- **5:46 a.m.:** Officer Whitaker delivered breakfast to Wright. Wright verbally acknowledged the delivery and made eye contact with Whitaker.[18]

---

[14] Exhibit E, at Trumbull 000049; ECF No. 74, Exhibit I.

[15] Exhibit E, at Trumbull 000049; Exhibit F; deposition testimony of Hake, ECF Doc. No. 73, Exhibit I.

[16] Exhibit E, at Trumbull 000140; ECF Doc. No. 73, Exhibit I.

[17] Exhibit E, at Trumbull 000050, 000078.

[18] Exhibit E, at Trumbull 000050, 000078.

- **6:25:** Officers transported Wright to a lockdown unit for continued observation.[19]

- **8:17 a.m.:** RMA Clay conducted medication pass. Wright declined to take his medications at that time, indicating that he had "stomach acid."[20]

- **Hourly Officer watch tours at 9:06a.m., 10:01 a.m., and 11:03 a.m.:** Officer Pappada observed nothing out of the ordinary relative to Wright during these tours.[21]

- **11:58 a.m.:** Wright is found unresponsive at meal delivery.[22]

- An autopsy subsequently conducted relative to Wright confirmed that while he had some heroin in his system, his death was unrelated to heroin or heroin withdrawal and was due to an unknown, undiagnosed, and unexpected heart condition.[23]

As outlined, a full understanding of the medical evidence demonstrates the provision of appropriate medical care to Wright, along with the absence of any injury causally related to that care. More importantly, the prudent medical actions taken by RMA Lobdell, NRCMA Hake, and Dr. Malvasi relative to Mr. Wright do not constitute deliberate indifference to Wright's medical needs in violation of 42 U.S.C. § 1983 and pursuant to *Farmer v. Brennan*, 511 U.S. 825 (1979), satisfying the objective and subjective knowledge requirements thereunder. During Lobdell's two medical interactions with Wright on May 4, 2017, she administered the limited wound care that Wright would permit her to provide, she addressed Wright's stomach complaints, and she dispensed the over-the-counter medication approved by Dr. Malvasi for such stomach complaints attendant to opiate withdrawal. Wright complained of and Lobdell observed no other medical issues that warranted further intervention, emergency care, or consultation with Dr. Malvasi or Nurse Ahart (who were both present at the Jail on May 4, 2017 and always

---

[19] Exhibit E, at Trumbull 000050.

[20] Exhibit E, at Trumbull 000050, 000143.

[21] Exhibit E, at Trumbull 000050.

[22] Exhibit E, at Trumbull 000050.

[23] Exhibit G; Exhibit H.

available for consultation). In other words, during Lobdell's 8-hour shift, Wright did not present with any serious medical needs—rather a common set of medical needs seen at the Jail. Nor was Lobdell was aware of and indifferent to any such needs. Lobdell instead made all necessary efforts to attend to Wright's articulated and observed medical concerns. Officers likewise reported no additional medical issues to Lobdell during their hourly watch tours, meal times, head counts, and other interactions with Wright.

NRCMA Hake similarly provided proper care to Wright, particularly in light of his lack of compliance with that care. As with Lobdell, Hake could not fully perform each of her intended medical tasks because Wright was resistant and uncooperative (following a long, documented history of such behavior relative to his medical care). Hake recorded and conducted the medical assessments she could conduct, and continued the medication plan Lobdell initiated, which was warranted by Wright's continued stomach and opiate withdrawal symptoms. These actions were taken in compliance with Dr. Malvasi's opiate withdrawal protocol, which followed a graduated system of treatment—focusing on symptom management first and moving to prescription medication management if over-the-counter medications failed to alleviate the relevant symptoms. Furthermore, following the conclusion of Hake's shift, multiple Officers and RMA Clay reported improvement in Wright's condition, despite his further refusal of offered medical care.

Moreover, although Plaintiffs attempt to criticize the medical assistants' training, the testimony of the assistants, Nurse Ahart, and Dr. Malvasi establishes that the assistants were properly qualified by education and the typical and essential on-the-job training in the medical field (and the specialized correctional setting as well). Lobdell was a medical extern at the Jail prior to being hired as a full-time medical assistant and receiving additional training in that

7

regard. Lobdell and Hake both had multiple medical certifications as well, attended medical staff training meetings on such matters as the withdrawal protocol, reviewed and understood the Jail Medical policies and procedures, and regularly consulted with and received ongoing training from Nurse Ahart and Dr. Malvasi. There is therefore no evidence that a lack of training existed or played a role in the attention to Wright's medical needs.

Accordingly, judgment in favor of Defendants is warranted as a matter of law. Plaintiffs have produced no evidence establishing deliberate indifference to Mr. Wright's medical needs or a causal connection to Wright's alleged injuries. In contrast, Defendants have produced expert medical evidence that they provided appropriate medical care to Mr. Wright and that Wright suffered no injuries related to his incarceration in May of 2017.

                      Respectfully submitted,

                      */s/ Leah M. Hohenberger*
                      **MELVIN F. O'BRIEN (0064252)**
                      **LEAH M. HOHENBERGER (0075640)**
                      Dickie, McCamey & Chilcote, P.C.
                      600 Superior Avenue East
                      Fifth Third Center, Suite 2330
                      Cleveland, Ohio 44114
                      216.685.1827 - Telephone
                      lhohenberger@dmclaw.com
                      **Attorneys for Defendants**