PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ESTATE OF GREGORY WRIGHT, *et al.*, | ) |
| Plaintiffs, | ) CASE NO. 4:17CV2383 |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| TRUMBULL COUNTY BOARD OF COMMISSIONERS, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) [Resolving ECF No. 76] |

Pending is Defendants' Phillip Malvasi, D.O., Rachael Hake, NRCMA, NRCEKG, RPT,[1] and Bethany Lobdell, RMA NRCPT's[2] Motion for Summary Judgment (ECF No. 76). The Court has been advised, having reviewed the record, including the parties' briefs,[3] the expert reports of Carla Baster D.O. (ECF No. 76-7 at PageID #: 984-91) and Melanie Tyler, M.D., MPH (ECF No. 80-1),[4] and the applicable law. After an examination of the record, the Court determines that oral argument is not needed. For the reasons set forth below, the motion is granted.

---

[1] Nationally Registered Certified Medical Assistant, Nationally Registered Certified EKG Technician, Registered Phlebotomy Technician

[2] Registered Medical Assistant, Nationally Registered Certified Phlebotomy Technician

[3] There are no stipulated facts in this case. *See* Joint Notice Regarding Stipulations of Fact (ECF No. 75).

[4] Plaintiffs' proffered expert, Dr. Tyler (whose unauthenticated report is attached to Plaintiffs' Objection (ECF No. 80), failed to review any of the testimony in this case and only reviewed a portion of Defendants' documents, which did not include the complete personnel records of Lobdell and Hake, as those were provided with Supplemental discovery responses. ECF No. 80-1 at PageID #: 1037-39.

(4:17CV2383)

## I. Background

On May 15, 2018, Barbara Wright, individually and as Administrator of the Estate of Gregory Wright, filed a First Amended Complaint (ECF No. 30). Plaintiffs' remaining claims as to Dr. Malvasi and Medical Assistants Hake and Lobdell include claims pursuant to 42 U.S.C. § 1983 and a medical negligence claim as to Dr. Malvasi.[5] The Amended Complaint states that Defendants' "deliberate[ ] indifference" to Gregory Wright's "serious medical needs" caused him "serious and permanent harm" and that Dr. Malvasi "breached the prevailing professional standard of care," causing harm to Wright. ECF No. 30 at ¶¶ 2, 65.

Barbra Wright was married to Gregory Wright and also serves as the fiduciary of his estate. Dr. Malvasi is the medical director of the Trumbull County Jail and is responsible for setting the Jail's medical policies. Dr. Malvasi and his supervising L.P.N., Carla Arhart, also trained and supervised all Jail Medical staff, including Hake and Lobdell, and provided them with appropriate and extensive written medical policies, procedures, and protocols. He is also responsible for providing adequate medical care to inmates at the Jail. Hake and Lobdell are Medical Assistants at the Jail and were supervised by Dr. Malvasi. Hake is a Nationally Registered Certified Medical Assistant and Lobdell is a Registered Medical Assistant.

On May 3, 2017 at 9:43 a.m., Gregory Wright reported to the Jail in order to serve an 18-month sentence. Upon entering the jail 41 minutes later, *i.e.*, at 10:24 a.m., Wright went through the normal jail intake process, which included a medical pre-screening conducted by a

---

[5] Plaintiffs dismissed Count VII (Gross Medical Negligence) of the First Amended Complaint as to Hake and Lobdell. *See* Stipulation and Order (ECF No. 61).

(4:17CV2383)

corrections officer. He was noted to be behaving normally and was without signs or symptoms of any alcohol or drug influence or withdrawal. Corrections Officer Machingo also recorded that Wright denied taking any non-prescription drugs and had no injuries or conditions that required the jail medical staff's immediate attention.

At approximately 11:00 a.m, a separate assessment was conducted by the Jail's supervising medical nurse, Carla Arhart, L.P.N. In the routine medical booking assessment, Wright informed Arhart of a wound on his leg requiring a bandage ("dressing") and that he suffered from blood clots in his leg for which he was prescribed Xarelto, which he brought with him to the jail. Wright also admitted to Arhart that he used heroin that morning. Nurse Arhart noted Wright to be in good medical condition, and recorded Wright's conditions on his medical chart. She further observed that Wright did not require formal medical observation or additional corrections officer rounds at that time. Pursuant to medical department procedures, Ahart also relayed Wright's medical information and condition to the medical staff, along with the medical chart documentation she completed. Nurse Ahart and Dr. Malvasi were both present at the Jail on May 4, 2017 and available for consultation. Dr. Malvasi's involvement with Wright included ordering Wright's Xarelto prescription medication related to his preexisting blood clot issues.

Around 4:00 p.m., Wright was brought to the Jail's Medical Department in order to have his leg wound cleaned, medicated, and re-dressed. Lobdell cleaned and bandaged the wound without the use of any medication because Wright refused to allow Lobdell to apply medication

3

(4:17CV2383)

to the wound.[6] Wright also mentioned that he was nauseated and was experiencing vomiting. Lobdell asked Wright if he was currently in withdrawal and Wright disclosed that he was currently "coming off of heroin." ECF No. 76-5 at PageID #: 973. In response, Lobdell offered Wright three (3) over-the-counter medications[7] in order to deal with the stomach symptoms of his withdrawal. Wright was provided with the medications that night during medication pass. Corrections officers did not report anything unusual about Wright during the remainder of Lobdell's eight-hour shift, which concluded at 10:20 p.m. on May 4, 2017.

At 12:05 a.m. on May 5, 2017, corrections officers summoned Hake to attend to Wright, who had vomited and was complaining of some numbness in his fingers. Wright told Hake that his stomach hurt and that he was experiencing heroin withdrawal. Hake noted that Wright was alert and competent and that he was "clammy" and "disheveled." Hake then attempted to take Wright's vitals, but Wright was "uncooperative." Given his lack of cooperation, Hake advised the corrections officers to continue to monitor Wright and to notify her if Wright's condition changed. She also ensured that Wright would again receive the three medications initiated by Lobdell the evening before at the next medication pass, in order to address Wright's continued withdrawal symptoms. General Assessment Form (ECF No. 76-6).

---

[6] Trumbull County's Policies and Procedure number 11.01 allows that "inmates have a right to refuse routine medical attention." This is consistent with the requirements for Ohio Minimal Standards for Jails. Dr. Baster reviewed Wright's records from St. Joseph's Hospital and remarked that they show a pattern of Wright frequently refusing medical attention. ECF No. 76-7 at PageID #: 988-89.

[7] Two Ibuprofen, 30 ml of Maalox, and an Imodium.

4

(4:17CV2383)

At 4:30 a.m., corrections officers called Hake, as Wright's symptoms had worsened. Once again, however, Hake was unable to complete a full vitals assessment because Wright refused to cooperate. Wright told her he did not want any offered medication for his stomach. Hake nonetheless placed notes in Wright's chart for him to receive the withdrawal protocol medications he had been started on again at the 8:00 a.m. medication pass. Pursuant to Hake's request, corrections officers periodically checked up on Wright. Officers thereafter interacted with Wright on multiple occasions that morning, with no noted further concerning medical issues of any kind during Hake's eight-hour shift, which concluded at 6:08 a.m. on May 5, 2017.

At 8:17 a.m., Wright declined to take his medications during medication pass indicating that he had "stomach acid." Corrections Officer Pappada observed nothing out of the ordinary relative to Wright during the hourly officer watch tours at 9:06 a.m., 10:01 a.m., and 11:03 a.m. Wright was subsequently found unresponsive at meal delivery at 11:58 a.m. Emergency personnel were called. Wright later died.

An autopsy subsequently conducted relative to Gregory Wright confirmed that while he had some heroin in his system, his death was unrelated to heroin or heroin withdrawal and was due to an unknown, undiagnosed, and unexpected heart condition. ECF No. 76-8. According to the final Autopsy Report, Wright's death was caused by "probable cardiac arrhythmia" due to "probable hypertensive cardiovascular disease." ECF No. 76-8 PageID #: 994. This is confirmed by the Toxicology Report conducted at the County of Summit Forensic Toxicology Laboratory. Toxicology was positive for Fentanyl (an opiate), and Carboxy THC (a metabolite of cannabis). ECF No. 76-8 at PageID #: 1001. An internal investigation of staff actions at the

5

(4:17CV2383)

Jail relating to White's death was also done by Lt. Eric C. Shay of the Trumbull County Sheriff's Office. ECF No. 76-5.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." Guarino v. Brookfield Twp. Trustees., 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of

(4:17CV2383)

material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Analysis

The medical actions of Dr. Malvasi and Medical Assistants Hake and Lobdell do not constitute deliberate indifference to Wright's serious medical needs in violation of 42 U.S.C. § 1983 or reveal that any medical standard of care was breached by Dr. Malvasi. *See* Expert Report of Carla Baster D.O. (ECF No. 76-7 at PageID #: 984-91). Furthermore, Plaintiffs have provided no evidence demonstrating such a violation or any injury proximately caused by the

7

(4:17CV2383)

medical care of these Defendants. A full review of the medical evidence demonstrates these Defendants provided appropriate medical care to Wright, and there was no injury causally related to that care. Accordingly, judgment in favor of these Defendants is warranted as a matter of law.

Defendants contend that granting summary judgment is proper because Plaintiffs have produced no evidence establishing deliberate indifference to Gregory Wright's serious medical needs. Specifically, Defendants assert that the training and procedures put in place by Dr. Malvasi, along with the prudent and necessary medical actions taken by Hake and Lodbell, were adequate, and that Wright's death was not proximately caused by any actions or nonactions of these Defendants. Plaintiffs oppose the motion and assert the existence of genuine issues of material fact that preclude the granting of summary judgment. These alleged disputes relate to (1) whether Hake and Lobdell's conduct posed a substantial risk of serious harm to Wright and (2) whether Dr. Malvasi's training and supervision was so inadequate that he could reasonably be said to have been indifferent to the needs of Wright. ECF No. 80. Plaintiffs note the following deposition testimony of Carla Ahart, L.P.N.:

> Q     Did you have formal training for the staff, formal training being predetermined topics and written materials?
> A     For training?
> Q     For training?
> A     No.

Deposition of Carla Ahart (ECF No. 70-1) at PageID #: 464. Arhart later explained, however, that there are training processes over such topics as "passing medication, packaging medication, ordering medications, dressing changes, diabetics, [and] all [other] policies and procedures," and

8

(4:17CV2383)

that the Jail keeps a checklist to ensure that staff are fully trained. ECF No. 70-1 at PageID #: 465.

Plaintiffs have not produced evidence sufficient to support a plausible constitutional claim against these Defendants regarding Wright's medical care. Failure to provide adequate medical treatment to a prisoner is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment only when it results from "deliberate indifference" to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Sixth Circuit has recognized that other federal appellate courts have found withdrawal symptoms to qualify as a serious medical need. *French v. Daviess Cty. Ky.*, 376 Fed.Appx. 519, 522 (6th Cir. 2010) (collecting cases). To establish a claim, a plaintiff must establish both objective and subjective components. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). He must demonstrate that his medical condition posed a substantial risk of serious harm to him and that the prison official in question acted with deliberate indifference to the risk. *Id.* at 702-03. "Deliberate indifference is characterized by obduracy or wantonness it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Courts have defined deliberate indifference as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). To satisfy the subjective component, a prisoner must show that the defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that

9

(4:17CV2383)

he then disregarded that risk." *Comstock*, 273 F.3d at 703; *see also Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) ("to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk").

Plaintiffs' evidence is insufficient to suggest that these Defendants were deliberately indifferent to Wright's medical needs. During Lobdell's two medical interactions with Wright on May 4, 2017, she administered the limited wound care that Wright would permit her to provide, she addressed Wright's stomach complaints, and she dispensed the over-the-counter medication approved by Dr. Malvasi for such stomach-related symptoms related to opiate withdrawal. Wright complained of and Lobdell observed no other medical issues that warranted further intervention, emergency care, or consultation with either Dr. Malvasi or Nurse Ahart. During Lobdell's shift, Wright did not present with any serious medical needs. Nor was Lobdell aware of and indifferent to any such needs. Lobdell instead made all necessary efforts to attend to Wright's articulated and observed medical concerns. Moreover, corrections officers reported no additional medical issues to Lobdell during their hourly watch tours, meal times, head counts, and other interactions with Wright.

Hake similarly provided proper medical care to Wright, particularly in light of his lack of compliance with that care. As with Lobdell, Hake could not fully perform each of her intended medical tasks because Wright was resistant and uncooperative. Hake recorded and conducted the medical assessments she could conduct, and continued the medication plan Lobdell initiated, which was warranted by Wright's continued stomach and opiate withdrawal symptoms. These

10

(4:17CV2383)

actions were taken in compliance with Dr. Malvasi's opiate withdrawal protocol, which followed a graduated system of treatment focusing on symptom management first and moving to prescription medication management if over-the-counter medications failed to alleviate the relevant symptoms. Furthermore, following the conclusion of Hake's shift, multiple corrections officers and Jessie Clay, RMA, NRCEKG reported improvement in Wright's condition, despite his further refusal of offered medical care.

Plaintiffs criticize the training of the Medical Assistants. *See, e.g.* [ECF No. 80 at PageID #: 1028](). Dr. Malvasi and Ahart, his supervising L.P.N., trained and supervised all Jail Medical staff, including Lobdell and Hake, and provided them with appropriate and extensive written medical policies, procedures, and protocols, which were followed in this instance by Lobdell and Hake. The deposition testimony of the Medical Assistants, Nurse Ahart, and Dr. Malvasi (ECF Nos. [70-1](), [72-1](), [73-1](), and [74-1]()) establishes that the assistants were properly qualified by education and the typical and essential on-the-job training in the medical field, as well as the specialized correctional setting. Lobdell was a medical extern at the Jail prior to being hired as a full-time medical assistant and receiving additional training in that regard. Lobdell and Hake both had multiple medical certifications, attended medical staff training meetings on such matters as the withdrawal protocol, reviewed and understood the Jail Medical policies and procedures, and regularly consulted with and received ongoing training from Nurse Ahart and Dr. Malvasi. Therefore, there is no evidence that a lack of training existed or played a role in the attention these Defendants gave to Wright's medical needs.

11

(4:17CV2383)

## IV. Conclusion

Viewing Plaintiffs' probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiffs, the Court concludes that there is no genuine issue of material fact and the movants are entitled to a judgment as a matter of law. For the foregoing reasons, Defendants' Phillip Malvasi, D.O., Rachael Hake, NRCMA, NRCEKG, RPT, and Bethany Lobdell, RMA, NRCPT's Motion for Summary Judgment (ECF No. 76) is granted. Final judgment will be entered in favor of these Defendants and against Plaintiffs on the First Amended Complaint (ECF No. 30).

IT IS SO ORDERED.

| September 25, 2019 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |